1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   ERICA AARON, et al.,                          CASE NO. 06-CV-1451-H(POR)

12                           Plaintiffs,           **ORDER:**
                                                   **(1) GRANTING IN PART**
13                                                 **AND DENYING IN PART**
                                                   **DEFENDANT CITY OF SAN**
14         vs.                                     **DIEGO AND INDIVIDUAL**
                                                   **DEFENDANTS' MOTION TO**
15                                                 **DISMISS;**
                                                   **(2) GRANTING IN PART**
16                                                 **AND DENYING IN PART**
                                                   **DEFENDANT MICHAEL**
17                                                 **AGUIRRE'S MOTION TO**
                                                   **DISMISS;**
18   MICHAEL AGUIRRE, et al.,                      **(3) GRANTING IN PART**
                                                   **AND DENYING IN PART**
19                           Defendants.           **DEFENDANT SDCERS'**
                                                   **MOTION TO DISMISS; AND**
20                                                 **(4) GRANTING DEFENDANT**
                                                   **KPMG'S MOTION TO**
21                                                 **DISMISS**

22
23
24         On October 19, 2006, Plaintiffs, over 1600 individual police officers, filed their

25   Second Amended Complaint ("SAC") against Defendants, alleging claims under 42

26   U.S.C. § 1983 and various state law claims.  (Doc. No. 70.)  On October 10, 2006,

27   Defendant City of San Diego ("City") and the Individual Defendants filed a motion to a

28

dismiss, or in the alternative, to stay.[1] (Doc. No. 62.). Defendant Michael Aguirre filed a motion to dismiss on October 10, 2006.[2] (Doc. No. 65.) On November 3, 2006, Defendant San Diego Employees' Retirement System ("SDCERS") filed a motion to dismiss the SAC, or alternatively, to abate or dismiss proceedings pertaining to state pension underfunding issues. (Doc. No. 86.) Finally, Defendant KPMG, LLP ("KPMG") filed a motion to dismiss the SAC on November 3, 2006. (Doc. No. 87.)

On October 10, 2006, Defendant City and the Individual Defendants filed a joinder to Defendant Aguirre's motion to dismiss. (Doc. No. 62.) On the same date, Defendant Aguirre filed a joinder in part to Defendant City and the Individual Defendants' motion to dismiss. (Doc. No. 68.) On October 27, 2006, SDCERS filed a joinder in part to Defendant City and Individual Defendants' motion to dismiss. (Doc. No. 79.) On November 9, 2006, Defendant City and the Individual Defendants filed a joinder in part in SDCERS' motion to dismiss. (Doc. No. 90.)

The Court heard oral argument on the various motions on December 4, 2006. Christopher Nissen appeared on behalf of Plaintiffs. Peter Benzian appeared for Defendant City and the Individual Defendants. Rodney Perlman and Donald McGrath appeared for Defendant Aguirre. Matthew Mahoney appeared for Defendant SDCERS, and Martha Gooding appeared for Defendant KPMG. After reviewing the papers and hearing oral argument, the Court GRANTS in part and DENIES in part Defendant City of San Diego and the Individual Defendants' motion to dismiss; GRANTS in part and DENIES in part Defendant Aguirre's motion to dismiss; GRANTS in part and DENIES

/ / / /

---

[1] Defendant City and the Individual Defendants filed their motion in response to the First Amended Complaint. During a telephonic hearing on October 24, 2006, these Defendants requested that the Court deem their motion as responsive to Plaintiffs' SAC. Accordingly, the Court ordered that these Defendants' motion to dismiss constituted their response to the SAC. (Doc. No. 77.)

[2] Defendant Aguirre filed his motion in response to the First Amended Complaint. During a telephonic hearing on October 24, 2006, however, Aguirre requested that the Court deem his motion as responsive to Plaintiffs' SAC. Accordingly, the Court ordered that Aguirre's motion to dismiss constituted his response to the SAC. (Doc. No. 77.)

1  in part Defendant SDCERS's motion to dismiss; and GRANTS Defendant KPMG's

2  motion to dismiss.

3       Additionally, the Court GRANTS Plaintiffs 30 days from the date this Order is

4  stamped "Filed" to file a third amended complaint that addresses the deficiencies of the

5  pleading set forth below.

6  **Background**

7       The Court notes the related case filed on behalf of the San Diego Police Officers'

8  Association, SDPOA v. Aguirre, 05-CV-1581-H(POR).  In that action, SDPOA sued

9  in its capacity as the recognized employee organization representing police officers

10  employed by the San Diego Police Department.  SDPOA filed that case in August 2005,

11  and in the intervening months, the Court has ruled on numerous matters, including

12  several motions to dismiss.  The same counsel filed the above-captioned case, Aaron

13  v. Aguirre, in the name of over 1,600 individual police officers.  The operative

14  complaints contain similar allegations.  Both complaints rely on extensive materials to

15  substantiate the allegations of misconduct in relation to the financial integrity of the

16  municipal pension fund.

17       In brief, Plaintiffs in this case allege that the municipal pension fund is

18  "actuarially unsound" and that their vested retirement and compensation benefits have

19  been unlawfully eliminated or reduced.  (See, e.g., SAC ¶¶ 17-26.)  Plaintiffs further

20  allege that the City engaged in bad faith labor negotiations with the police officers'

21  union, SDPOA, in a scheme to take away vested retirement and healthcare benefits, and

22  that the City singled them out for retaliation.  (See, e.g., id. ¶¶ 29-45.)  Additionally,

23  Plaintiffs allege that Defendants manipulated pension funds and deprived them of

24  contributions.  (See, e.g., id. ¶¶ 46-50.)

25       In the SAC, Plaintiffs bring federal civil rights claims as well as state law claims

26  against Defendant Aguirre, the San Diego City Attorney; Defendant City of San Diego;

27  and SDCERS.  The SAC also names individual employees and elected officers,

28

1   including current and former members of the San Diego City Council,[3] former officials

2   of the City of San Diego,[4] and former board members (or trustees) of SDCERS.[5]  Unlike

3   the <u>SDPOA</u> action, this action also names KMPG as a Defendant, the accounting firm

4   that the City of San Diego hired to perform audits.  (Compl. ¶ 15.)  Finally, the SAC

5   names Does one through 100 as Defendants.  (<u>Id.</u> ¶ 16.)

6   **Discussion**

7   **A.   Legal Standard for Motion to Dismiss**

8          "A complaint should not be dismissed under Rule 12(b)(6) 'unless it appears

9   beyond doubt that the plaintiff can prove no set of facts in support of his claim which

10  would entitle him to relief.'"  <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th

11  Cir. 1990) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  "Dismissal can be

12  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

13  under a cognizable legal theory."  <u>Id.</u>  In ruling on a Rule 12(b)(6) motion, the facts in

14  the complaint are taken as true and construed in the light most favorable to the

15  nonmoving party.   <u>Cahill v. Liberty Mutual Ins. Co.</u>, 80 F.3d 336, 337-38 (9th Cir.

16  1996).

17         "Generally, a district court may not consider any material beyond the pleadings

18  in ruling on a Rule 12(b)(6) motion."  <u>Hal Roach Studios, Inc. v. Richard Feiner & Co.</u>,

19  896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  The court may, however, consider the

20  contents of documents specifically referred to and incorporated into the complaint.

---

22  [3]The current City Council Defendants include Toni Atkins, Donna Frye, Ralph
23  Inzunza, Jim Madaffer, Brian Maienschein, Scott Peters, Tony Young, and Michael
    Zucchet.  (SAC ¶ 12.)  Former City Council Defendants include Harry Mathis, Byron
24  Wear, Christine Kehoe, George Stevens, Barbara Warden, Valerie Stallings, Judy
    McCarty, and Juan Vargas.  (<u>Id.</u>)

25  [4]The City Official Defendants include Cathy Lexin, Mary Vattimo, Terri
26  Webster, Ed Ryan, Bruce Herring, Lamont Ewell, Michael Uberuaga, and Jack
    McGrory, who served in executive positions, for example, as the City Manager or
27  Treasurer.  (SAC ¶ 13.)

28  [5] The Retirement Board Member Defendants include Lexin, Vattimo, Webster,
    Ryan, and Herring, who are also named in their capacities as City Officials.  (SAC ¶
    13 & 14.)

1   Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994).  As noted, Plaintiffs' complaint

2   incorporates several reports and opinions to support its allegations of wrongdoing.

3       In addition, a court ruling on a motion to dismiss may consider facts that are

4   subject to judicial notice.  A district court may take judicial notice of matters of public

5   record, but cannot use this rule to take judicial notice of a fact that is subject to

6   "reasonable dispute" simply because it is contained within a pleading that has been filed

7   as a public record.  Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001);

8   Biagro W. Sales Inc. v. Helna Chemical Co., 160 F.Supp.2d 1136, 1140-41 (E.D. Cal.

9   2001) (matters of public record include "pleadings, orders and other papers filed with

10  the court").  Similarly, a court may take judicial notice of the *existence* of a court

11  opinion, but not "'the truth of the facts recited therein.'"  Lee, 250 F.3d at 689 (quoting

12  Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d

13  410, 426-27 (3d Cir. 1999)).

14  **B.    Statute of Limitations as to § 1983 Claims**

15      Defendant City, Individual Defendants, SDCERS, and Aguirre argue that

16  Plaintiffs' § 1983 claims[6] are barred by the two year statute of limitations.  Plaintiffs

17  oppose on several grounds.

18      In § 1983 actions, the court applies the same statute of limitations as the forum

19  state for personal injury claims.  Wilson v. Garcia, 471 U.S. 261, 275 (1985).  In

20  California, the statute of limitations for a personal injury claim is two years.  See Cal.

21  Code Civ. Proc. § 335.1.  The accrual of a § 1983 claim is a question of federal law.

22  Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001).   Under federal law, a § 1983

23  claim accrues "when the plaintiff knows or has reason to know of the injury which is

24  the basis of the action."  Id. (quoting TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir.

25  1999)).  Plaintiffs filed this action on July 18, 2006.  (See Doc. No. 1.)  Therefore,

26  _____

27          [6] Plaintiffs' § 1983 claims include: Claim One (First Amendment Retaliation);
    Claim Two (Contracts Clause Violations); Claim Three (Takings Clause Violations);
28  Claim Four (14th Amendment Procedural Due Process Violations); and Claim Five
    (Conspiracy to Violate Civil Rights).

1  under the applicable two year statute of limitations, any claims in the Second Amended

2  Complaint must have accrued after July 18, 2004.

3      **1.**    **First Amendment Retaliation**

4      Defendants assert the statute of limitations argument as to Plaintiffs' § 1983

5  claims that are premised on alleged underfunding of SDCERS caused by

6  implementation of MP1 in 1996 and MP2 in 2002. Plaintiffs' First Amendment claim

7  alleges retaliatory conduct beginning in January of 2005 and, thus, is within the statute

8  of limitations.  (See SAC[7] ¶¶ 29-39.)  Therefore, the Court **DENIES** Defendants'

9  motion to dismiss based on statute of limitations as to Plaintiffs' First Amendment

10  claim.

11      **2.**    **Contracts Clause, Takings Clause, Procedural Due Process, and**

12  **Conspiracy to Violate Civil Rights Claims**

13      In their motion, Defendants argue that Plaintiffs' representative, the SDPOA, as

14  well as SDPOA officials, were involved in the implementation of MP1 and MP2 and

15  were aware of those proposals' impact upon SDCERS funding levels. Accordingly,

16  Defendants argue that the statute of limitations began to run before July 18, 2004,

17  making Plaintiffs' claims time barred. Defendants also point to this Court's reasoning

18  and ruling on motions to dismiss in SDPOA v. Aguirre in support.

19      In opposition, Plaintiffs direct the Court to portions of the SAC in which they

20  allege that they were not aware of the danger to their benefits until 2005 when the

21  Mayor of San Diego's public comments, as well as statements by the City's labor

22  negotiator, brought the issues to Plaintiffs' attention.[8] Further, Plaintiffs state that their

23  

---

24      [7] Defendant City, Individual Defendants, and Aguirre in their motions to dismiss,
and Plaintiffs in their responses, cite to the First Amended Complaint, as that was the

25  operative complaint when they filed their papers.  The SAC, however, is now the
operative complaint.  Nevertheless, the FAC and the SAC are identical except for

26  allegations relating to KPMG.

27      [8] In this section of their response, Plaintiffs omit reference to their Fourteenth
Amendment Due Process claim.  The Court assumes this was an oversight, as

28  Defendants' motion seeks to dismiss Plaintiffs' due process claim on the same statute
of limitations grounds.

§ 1983 claims do not rely solely on MP1 and MP2 as the basis for alleged deprivation of rights.

### a.   MP1

Defendants argue that any claim for relief relating to MP1 is barred by the statute of limitations.   Although Plaintiffs state that they did not know at the time that Defendants were scheming to underfund the pension plan until early 2005, (see SAC ¶ 51), they attach numerous exhibits to the SAC that demonstrate the contrary.

Manager's Proposal 1, or MP1, was implemented in 1996 and contained provisions granting additional retirement benefits while reducing annual funding percentages.  (See, e.g., id., Ex. K at 14; Ex. G at 9.)  MP1 also contained a provision requiring the City to make a balloon payment if the ratio of fund assets to liabilities fell below 82.3 percent.  (Id., Ex. K at 14.)  When MP1 was implemented, the plan was more than 90% funded.  (Id.)  After a downturn in the market, however, the funding ratio dropped to 77.3% in Fiscal Year 2002.  (Id.)

The SDPOA was specifically involved in the meet and confer process that led to the implementation of MP1.  (Id., Ex. J at 10, 25.)   In March 1996, the City Council held a closed session for labor negotiations with three of the City's four unions, including the SDPOA, regarding MP1.  (Id. at 10.)  Additionally, Garry Collins, President of the SDPOA, signed off on MP1 in June 1996.  (See id. at 28.)  Because Plaintiffs' union and the union officials representing Plaintiffs were informed and involved in the meet and confer process regarding MP1, and because union officials approved MP1, Plaintiffs had knowledge of the implementation of MP1 at the time. Moreover, a pension board member who voted against MP1 warned of the risk MP1 posed to the financial stability of SDCERS at a workshop regarding MP1 held on June 11, 1996.  (Id. at 37-44.)  Specifically, the board member raised concerns about transferring the costs to the next generation, whether there were any standards regarding funding levels available to fiduciaries, and whether the board had a fiduciary duty to assess the City's financial ability to pay for the new benefits.  (Id. at 37-39.)  Further,

a public hearing held on June 21, 1996 regarding MP1 addressed whether the pension board needed to determine whether the City would be able to meet its obligations under MP1. (Id. at 44.)  In addition, the Court concludes that MP1, implemented in 1996, is too remote in time and clearly outside the statute of limitations period.  Accordingly, the Court **GRANTS** Defendants' motion on this ground, and any claims concerning the implementation of MP1 in 1996 are barred by the statute of limitations.

For the same reasons, the Court **GRANTS** Defendants' motion to dismiss as to the former members of the San Diego City Council and the former city manager whose terms expired by 2002.  Any alleged acts by these former City Council members were based on the implementation of MP1 and their acts are barred by the statute of limitations.   These Defendants include Mathis, Wear, Kehoe, Stevens, Warden, Stallings, McCarty, Vargas and former city manager McGrory.

### b.   MP2

Similarly, Defendants argue that Plaintiffs were involved in the implementation of MP2 and were aware of its effect upon SDCERS funding levels.   Therefore, Defendants argue that the statute of limitations began to run prior to July 18, 2004, and, thus, Plaintiffs' claims based upon MP2 are time barred.   In particular, Defendants argue that the directors of the SDPOA were aware of the risks presented by MP2. Further, Defendants argue that the documents Plaintiffs attached to the SAC show that implementation of MP2 was a critical component of the City's labor negotiations involving SDPOA.  Further, Defendants point out that SDPOA's treasurer attended SDCERS board meetings leading up to the enactment of MP2 during which individuals warned of the dangers MP2 posed to the soundness of SDCERS.  In response, Plaintiffs state that the facts surrounding the underfunding problems with MP2 are disputed. Further, they direct the Court to a portion of the SAC in which they state that they were not aware of the dangers to their benefits until 2005.

MP2 was entered into by the City Council on November 18, 2002.  (See, e.g., id., Ex. G at 11.)  In part, MP2 was implemented to avoid the cash infusion to the pension

system established in MP1, which, as mentioned above, required the city to make up the shortfall if the funded ratio went below 82.3%. (See, e.g., id., Ex. K at 14.) Under MP2, the parties agreed to additional and retroactive benefits without a corresponding increase in contributions. MP2 added substantial liabilities to the pension fund. (Id.)

Defendants argue that Plaintiffs' union was involved in the meet and confer process with the City concerning MP2. (See SAC, Ex. K at 18.) Although the document attached to the SAC referenced by Defendants states that MP2 was discussed "[i]n the meet and confer process with the labor union," (id.), the facts surrounding the underfunding problems with MP2 are disputed. Similarly, although Defendants point to a document indicating that SDPOA's treasurer attended many SDCERS board meetings, the facts are in dispute regarding Plaintiffs' knowledge. For example, the SAC alleges that Plaintiff did not learn about the danger to the soundness of the pension system until early 2005, and that they did not learn of associated funding dangers until mid 2005. (Id. ¶ 51.) Further, the SAC alleges that Defendants met in closed sessions to divert funds used for the pension for "pet projects" and personal gain. (Id. ¶ 27.)

In ruling on a motion to dismiss, the Court must take the allegations in the SAC as true. See North Star Int'l, 720 F.2d at 581. Based on the allegations of conflict of interest, self dealing, and violation of various laws, and based upon factual disputes and uncertainty as to timing, the Court **DENIES** Defendants' motion to dismiss any causes of action relating to MP2 on statute of limitations grounds.

### c.   Press Coverage of SDCERS Financial Status

Defendants also argue that the troubled financial status of SDCERS was a widely known public issue before July 2004 due to overwhelming publicity regarding SDCERS underfunding. While Defendants acknowledge this Court's ruling in SDPOA v. Aguirre declining to find that newspaper articles demonstrated as a matter of law that the statute of limitations barred any causes of action relating to MP2, they argue that the additional publicity between August 2003 and July 18, 2004 requires a different result in this case. Plaintiffs make several arguments in response. First, they claim that

1    underfunding by itself is not the liability trigger, as they argue that underfunding alone

2    did not make SDCERS actuarially unsound.  Accordingly, Plaintiffs assert that

3    Defendants would have to show that each Plaintiff had actual or constructive knowledge

4    that SDCERS was actuarially unsound.  Further, Plaintiffs argue that none of the news

5    reports indicate the funding ratio for SDCERS at any point in time, and they do not

6    explain what percentage would constitute actuarial unsoundness.  Rather, Plaintiffs

7    asset that the articles simply provide dollar amounts without context.  Finally, Plaintiffs

8    argue that Defendants' argument based upon press coverage is premature at the motion

9    to dismiss stage.

10       In ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure

11   12(b)(6), if "matters outside the pleading are presented to and not excluded by the court,

12   the motion shall be treated as one for summary judgment and disposed of as provided

13   in Rule 56, and all parties shall be given reasonable opportunity to present all material

14   made pertinent to such a motion by Rule 56."  Fed. R. Civ. P. 12(b); see also United

15   States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).  A court may consider certain

16   materials such as documents attached to the complaint, documents incorporated by

17   reference in the complaint or matters of judicial notice without converting the motion

18   to dismiss to a motion for summary judgment.  Ritchie, 342 F.3d at 908.  Courts may

19   only take judicial notice of facts that are "not subject to reasonable dispute."  Fed. R.

20   Evid. 201(b).  These facts must either be "generally known within the territorial

21   jurisdiction of the trial court," or "capable of accurate and ready determination by resort

22   to sources whose accuracy cannot reasonably be questioned."  Id.  In Pharmacare v.

23   Caremark, the court stated that newspaper articles submitted by the parties would

24   convert the motion into one for summary judgment.  965 F. Supp. 1411, 1417 n.9 (D.

25   Haw. 1996).

26       Even though Defendants attempt to distinguish the situation in this case from that

27   in SDPOA v. Aguirre by highlighting the additional news coverage of the pension crisis

28   between August 2003 and July 2004, at the motion to dismiss stage the Court concludes

that consideration of newspaper articles does not establish as a matter of law that the causes of action relating to MP2 are barred by the statute of limitations. Accordingly, the Court **DENIES** Defendants' motion to dismiss on statute of limitations grounds based upon press coverage. Defendants may renew their statute of limitations defense in a motion for summary judgment where the Court determines whether there are disputed issues of material facts.

### d.    Plaintiffs' Estoppel Theory

Defendants contend that Plaintiffs' theory that Defendants should be estopped from asserting the statute of limitations, which Plaintiffs assert in the SAC, is inapplicable. (See SAC ¶ 9.) According to the SAC, a state court ruled in favor of Aguirre and the City in a related action, finding that their cross complaint sufficiently alleged tolling due to a conspiracy to conceal wrongdoing relating to MP1 and MP2. (Id.) Thus, Plaintiffs assert that, because Aguirre and the City's position in that case is inconsistent with the position they took in SDPOA v. Aguirre, the City should be estopped from arguing that tolling does not apply as to MP1 and MP2 in this case.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782 (9th Cir. 2001) (citing Rissetto v. Plumbers & Steamfitters Local 343, 94 F.3d 597, 600-01 (9th Cir. 1996) and Russell v. Rolfs, 893 F.2d 1033, 1037 (9th Cir. 1990)). The Supreme Court has set forth three factors courts may consider in determining whether to apply judical estoppel: (1) whether the party's position is clearly inconsistent with its earlier position; (2) whether the party has been successful in persuading a court to accept the party's earlier position; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001). "An inconsistent factual or legal position is a threshold requirement" for judicial estoppel to apply. United States v. Lence, 466 F.3d 721, 726 (9th Cir. 2006).

The Ninth Circuit has declined to apply the doctrine where a party's two positions were not necessarily inconsistent.  See, e.g., Yanez v. United States, 989 F.2d 323, 327 (9th Cir. 1993).

Here, Plaintiffs argue that Defendants took the position in the earlier state court suit that the statute of limitations was tolled due to conspiracy to conceal wrongdoing, while in their present motion Defendants argue that Plaintiffs' concealment allegations do not toll the statute of limitations.  Defendants, on the other hand, argue that their position in the state case concerns the ongoing and continuing payment of allegedly unlawful benefits.  Defendants assert that their position in this case is not inconsistent, arguing that Plaintiffs do not challenge the legality of benefits, but instead challenge discrete acts of underfunding.  Because the Defendants' positions are not "clearly inconsistent," the Court declines to apply judicial estoppel.  New Hampshire, 532 U.S. at 750.

In sum, the Court **GRANTS** Defendant City of San Diego, Individual Defendants, Defendants SDCERS, and Aguirre's motion to dismiss on statute of limitations grounds as to MP1 on the Contracts Clause, Takings Clause, 14th Amendment Due Process Clause, and Conspiracy to Violate Civil Rights causes of action.  The Court also **GRANTS** Defendants' motion to dismiss as to the former members of the San Diego City Council and the former city manager whose terms expired by 2002.  These Defendants include Mathis, Wear, Kehoe, Stevens, Warden, Stallings, McCarty, Vargas and former city manager McGrory.  The Court **DENIES** Defendants' motion to dismiss any federal causes of action based on MP2.  The Court also **DENIES** Defendants' motion to dismiss based on statute of limitations as to the First Amendment claim because MP1 and MP2 are not relevant to that claim.

**C.    Absolute Legislative Immunity**

The City Council Defendants, joined by Aguirre, argue that they are entitled to absolute legislative immunity, and thus, the Court must dismiss Plaintiffs' § 1983

/ / / /

claims against them. Plaintiffs oppose, arguing that these Defendants have not met their burden of establishing absolute immunity.

Local legislators are absolutely immune from suit under § 1983 for their legislative activities. Bogan v. Scott-Harris, 523 U.S. 44, 49 (1998). Immunity attaches to all actions taken "in the sphere of legitimate legislative activity." Id. at 54. Whether an act is legislative depends on the nature of the act, rather than the motive or the intent of the official. Id. The burden of establishing absolute immunity is on the party asserting it. Kaahumanu v. County of Maui, 315 F.3d 1215, 1220 (9th Cir. 2003).

The Ninth Circuit requires courts to consider the following factors in determining whether an action is legislative: (1) "whether the act involves ad hoc decisionmaking, or the formulation of policy"; (2) "whether the act applies to a few individuals, or to the public at large"; (3) "whether the act is formally legislative in character"; and (4) "whether it bears all the hallmarks of traditional legislation." Id. Legislators cannot claim immunity for illegal acts, however. Bruce v. Riddle, 631 F.2d 272, 279 (4th Cir. 1980). The Supreme Court has not "hesitated to sustain the rights of private individuals when it found Congress was acting outside its legislative role." Tenney v. Brandhove, 341 U.S. 367, 377 (1951).

According to the SAC, each natural person Defendant acted in a manner that constituted "ad hoc decision making and illegitimate legislative activity for the purpose of diverting retirement system contributions and funds, depriving, eliminating or reducing retirement system benefits, which benefits applied to a distinct group instead of to the public at large, and which were not formally legislative in character and/or taken through traditional legislative acts." (SAC ¶ 54.) While Defendants argue that the alleged acts were not ad hoc decision making, that the decisions affected a wide range of persons, that the decisions were formally legislative in nature, and that the acts bore hallmarks of legislation, the Court must accept the allegations in the complaint as true for purposes of ruling on a motion to dismiss. Accordingly, based on these allegations, the Court **DENIES** the City Council Member Defendants and Aguirre's

1   motion to dismiss based on absolute legislative immunity.  Defendants may raise their

2   claim for absolute legislative immunity at a later stage of the proceeding.

3   **D.     Absolute Immunity as to Aguirre**

4           Defendant Aguirre, joined by the City and Individual Defendants, argues that he

5   should be entitled to absolute immunity.  Plaintiffs rely on this Court's ruling in

6   SDPOA v. Aguirre and ask the Court to deny Aguirre's motion on this ground.

7           Defendant Aguirre has not clarified why he is entitled to absolute immunity on

8   the § 1983 claims.  He cites to cases examining judicial and/or prosecutorial immunity.

9   See, e.g., Imbler v. Pachtman, 424 U.S. 409, 431 (1976) (a prosecuting attorney was

10  absolutely immune when he acted within the scope of his duties when initiating and

11  prosecuting a criminal case).  In Ashelman v. Pope, however, the court stated that

12  prosecutorial immunity is not absolute if a prosecutor acts outside his authority.

13  793 F.2d 1072, 1077 (9th Cir. 1986).  The court looks to "the nature and/or function of

14  the prosecutor's activity."   Id.   If a prosecutor is performing investigative or

15  administrative acts, the prosecutor is not entitled to absolute immunity, but may be

16  subject to qualified immunity.  Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003).

17          The SAC asserts that Aguirre was acting outside the scope of his duties when he

18  attempted to negotiate with union leaders.  (SAC ¶¶ 32, 34.)  In taking the allegations

19  in the SAC as true, the Court **DENIES** Defendant Aguirre's motion to dismiss based

20  on absolute immunity.  See North Star Int'l, 720 F.2d at 581.

21  **E.     Qualified Immunity**

22          The Individual Defendants and Aguirre argue that they are entitled to qualified

23  immunity from Plaintiffs' § 1983 claims.  In support, Defendants state that Plaintiffs'

24  allegations are insufficient to overcome qualified immunity.  Plaintiffs oppose, relying

25  primarily on this Court's reasoning in ruling on motions to dismiss in SDPOA v.

26  Aguirre.

27          "[G]overnment officials performing discretionary functions generally are

28  shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). To establish qualified immunity, a court must first determine whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" <u>Saucier v. Katz</u>, 533 U.S 194, 201 (2001). If a violation of a constitutional right is established, the next question is "whether the right was clearly established." <u>Id.</u> That is, "whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." <u>Id.</u> at 202. The United States Supreme Court has noted that a ruling on immunity should be made early in the proceedings. <u>Id.</u> at 200. When there are disputed issues of material fact, however, a jury must resolve the factual disputes. <u>Ortega v. O'Connor</u>, 146 F.3d 1149, 1154 (9th Cir. 1998); <u>Act Up!/Portland v. Bagley</u>, 988 F.2d 868, 873 (9th Cir. 1993).

### 1.    Freedom of Association

The First Amendment of the United States Constitution provides: "Congress shall make no law . . . abridging the freedom of speech." Regarding the right to association, "[o]ne of the foundations of our society is the right of individuals to combine with other persons in pursuit of a common goal by lawful means." <u>Lyng v. Int'l Union</u>, 485 U.S. 360, 366 (1988). The right to association extends to unions as well as its members and organizers. <u>Allen v. Medrano</u>, 416 U.S. 802, 819 n.13 (1974). The right to association encompasses the right of public employees to associate and speak freely and petition openly. <u>Smith v. Arkansas State Highway Employees, Local 1315</u>, 441 U.S. 463, 464-65 (1979).

In a First Amendment retaliation claim, a plaintiff must show "that (1) he was subjected to an adverse employment action . . . , (2) he engaged in speech that was constitutionally protected because it touched on a matter of public concern and (3) the protected expression was a substantial motivating factor for the adverse action." <u>Ulrich v. City and County of San Francisco</u>, 308 F.3d 968, 976 (9th Cir. 2002) (citations omitted).

Plaintiffs allege that the City singled out Plaintiffs for not accepting the City's offer by not including salary reduction for DROP employees in offers made to other labor organizations with which Defendants were negotiating.  (SAC ¶¶ 35, 36.) Plaintiffs allege that "Defendant City only imposed the 'corresponding' salary reduction against the SDPOA's DROP-employees."  (Id. ¶ 35.)  Further, the SAC alleges: "In unilaterally implementing the changes, Defendants did not give a corresponding increase in benefits to LBFO-Plaintiffs or DROP-Plaintiffs in response to the detriment imposed.  All changes decreasing vested retirement benefits or decreasing pay by an amount 'corresponding' to the additional SDCERS contributions without a corresponding increase in benefits were illegal, unconstitutional and invalid.  Wrongful conduct also serves as First Amendment Retaliation."  (Id. ¶ 39.)  According to the SAC, this "singling out, along with Defendant Aguirre's subsequent comments that undermined and interfered with the SDPOA's union activities with its members . . . punished these Plaintiffs for lawful affiliation and/or exercise of free speech with the SDPOA, and interfered with, restrained and/or chilled the exercise of their rights to join and/or engage in collective labor activities."  (Id. ¶ 40.)

The SAC also alleges that on January 14, 2005, Defendant Aguirre, acting under color of authority of the City of San Diego, held a meeting at which "he offered the Union leaders $650 million" that "would be 'left on the bargaining table'" if "the unions agreed to support Defendant Aguirre with respect to his labor agreement proposals to reduce vested retirement benefits."  (Id. ¶¶ 33, 34.) According to the SAC, when SDPOA rejected the offer, the acts of retaliation began.  (See, e.g., id. ¶¶ 35-40.)

Looking at these allegations, the Court concludes that the alleged connection to the individual Plaintiffs is too attenuated.  Further, some of the attachments to the SAC appear to be inconsistent with some of the allegations.  While the Court found similar allegations sufficient to state a claim against the SDPOA in SDPOA v. Aguirre, it is unclear here how Defendants allegedly retaliated against the individual Plaintiffs. Accordingly, the Court finds that Plaintiffs have failed to allege sufficiently a First

Amendment Retaliation claim.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss the First Amendment Retaliation on qualified immunity grounds, but **GRANTS** Plaintiffs leave to amend.

### 2.    Contracts Clause, Article I, § 10

#### a.    Violation of a Constitutional Right

Article I, section 10, clause 1 of the United States Constitution states, "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."  U.S. Const. art I, § 10, cl. 1.  To comply with the Contracts Clause, impairments of state contractual obligations must be "reasonable and necessary to serve an important public purpose." United States Trust Co. v. New Jersey, 431 U.S. 1, 25 (1977).  As the Ninth Circuit has observed, "the [contract clause's] prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula."   State of Nevada's Employees Ass'n. Inc. v. Keating, 903 F.2d 1223, 1226 (9th Cir. 1990) (quoting United States Trust Co. v. New Jersey, 431 U.S. 1, 21 (1977)).  Relatedly, California law is clear that pension benefits can be modified to insure the integrity of the entire system.  Allen v. City of Long Beach, 45 Cal. 2d 128, 131 (1955); Wisely v. City of San Diego, 188 Cal. App. 2d 482, 486-87 (1961).   The extent of modification is subject to a "reasonableness" standard, but this is an intensely factual question that cannot be determined in a vacuum.  Carmen v. Alvord, 31 Cal.3d 318, 325 (1982) (substantially similar terms); Kern v. City of Long Beach, 29 Cal. 2d 848, 854-56 (1947).

To determine whether a state law that involves the contractual obligations of a public entity violates the Contract Clause, the court must determine (1) whether the state law creates contractual obligations; (2) whether the state law substantially impairs the State's contractual obligations; and (3) whether the impairment was reasonable and necessary to serve an important public purpose.  Id.

#### i.    Whether a State Law Creates Contractual Obligations

The Court must first determine whether there is a contract between the state and the employee for the benefits.  "Federal law, not [state] law, controls whether the state

statutes at issue create contractual rights protected by the contracts clause." <u>Keating</u>, 903 F.2d at 1227.  In <u>Keating</u>, the Ninth Circuit followed the reasoning of the Nevada Supreme Court and held that non-vested employees have contractual rights in pension plans "subject to reasonable modification in order to keep the system flexible to meet changing conditions, and to maintain the actuarial soundness of the system." <u>Id.</u> (quoting <u>Public Employees' Retirement Bd. v. Washoe County</u>, 96 Nev. 718, 722 (1980)).   Similarly, the California courts have explained that "[r]easonable modifications are often necessary in order that the pension system may be kept flexible, to permit adjustments in accord with changing conditions and to maintain the integrity of the system in order to carry out its beneficent purpose." <u>Wisely</u>, 188 Cal. App. 2d at 485-86.  At oral argument, Plaintiffs requested that the Court take judicial notice of a proposed report of investigation by the Securities and Exchange Commission related to bond offerings by the City of San Diego.  Defendants objected, noting that the document was only a proposed version and that the SEC had recently entered an order in the same matter.  <u>See</u> <u>In re City of San Diego, California</u>, Order Instituting Cease-and-Desist Proceedings, Making Findings, and Imposing a Cease-and-Desist Order Pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934, Securities Act Release No. 8751, Exchange Act Release No. 54745, 2006 WL 3298665  (November 14, 2006).  Defendants asked the Court to take judicial notice of the SEC's cease and desist order.  The Court takes judicial notice of the order and notes that the SEC detailed the serious funding problems with the pension system.

Plaintiffs allege in the SAC that the San Diego "City Charter, Municipal Code, successive-MOUs, separate employment agreements and/or other laws, rules and/or regulations" created rights in pension benefits.  (SAC ¶ 17.)  In addition, according to the SAC, employees of the DROP program enter into an agreement with terms vested at the time of contract with the City.  (<u>Id.</u> ¶¶ 24-25.)  Thus, Plaintiffs allege that the City Charter, municipal codes, and various other agreements, laws, and regulations have

created contractual rights in the pension plan.  See Wisely, 188 Cal. App. 2d at 485.  In ruling on a motion to dismiss, the Court must take the factual allegations in the SAC as true and construe those allegations in favor of the nonmoving party.  See North Star Int'l, 720 F.2d at 581.  Based on this standard, the Court concludes that Plaintiffs have alleged contractual rights in their pension plans.

### ii. Whether the State Law Substantially Impairs the State's Contractual Obligations

In the SAC, Plaintiffs allege that the City has failed to fund the retirement system, diverted health care funds, and in general has unlawfully deprived, eliminated or reduced retirement benefits promised to Plaintiffs.  (See, e.g., SAC ¶¶ 26, 28, 41-43.)  Plaintiffs also allege that the Individual Defendants and Aguirre met in closed sessions to plan and carry out a strategy to reduce the City's unfunded pension liability by imposing changes unlawfully.  (Id. ¶¶ 28, 32, 37-39.)  The documents Plaintiffs attach to the complaint, however, indicate that Aguirre has sought to make changes to the pension system through legal proceedings.  Plaintiffs also allege that the Individual Defendants and Aguirre met in closed sessions to plan to reduce the unfunded liability and illegally transferred administration of retiree healthcare benefits from SDCERS to the City, acting through Council Members and Officials.  (Id. ¶ 41-42.)  In sum, although attached documents appear inconsistent with some of the allegations, this is better suited for resolution at the summary judgment stage, and the Court finds that Plaintiffs have alleged sufficiently that the state law substantially impairs contractual obligations.

### iii. Whether the Impairment was Reasonable and Necessary to Serve an Important Public Purpose

Plaintiffs allege that the impairment was neither reasonable nor necessary to serve an important public purpose.  Plaintiffs allege that Defendants did not provide Plaintiffs with a corresponding benefit in response to detriments imposed.  (SAC ¶ 39.)  Further, the SAC alleges that Defendants retaliated against Plaintiffs for failing to

accept the City's final offer during labor negotiations.[9]  (Id. ¶ 35-40.)  The SAC also alleges that the Individual Defendants and Aguirre conspired with the City to eliminate and/or reduce retirement benefits.  (Id. ¶ 38.)  Although, as the court stated in Wisely, modifications of a pension system are permissible "to permit adjustments in accord with changing conditions and to maintain the integrity of the system," see Wisely, 188 Cal. App. 2d at 485, the Court must take the factual allegations in the SAC as true and construe those allegations in favor of the nonmoving party.  See North Star Int'l, 720 F.2d at 581.  Thus, the Court concludes that Plaintiffs have alleged facts showing a violation of the Contracts Clause against Defendants.

### b.    Whether the Right Was Clearly Established

Next, the Court must determine whether "the law at the time of the alleged constitutional violation was clearly established."  Serrano v. Francis, 345 F.3d 1071, 1080 (9th Cir. 2003).  At this time, it is not clear whether it was clearly established that the alleged acts of Defendants in allegedly underfunding the pension and in attempting to reduce the unfunded liability of the pension were violations of the Contracts Clause.  See, e.g., Wisely, 188 Cal. App. 2d at 485.   Accordingly, the Court **DENIES** Defendants' motion to dismiss the Contracts Clause claim based on qualified immunity.

### 3.    Takings Clause under the Fifth Amendment

### a.    Violation of a Constitutional Right

The Fifth Amendment to the Constitution states, "private property [shall not] be taken for public use, without just compensation."  To state a claim under this clause, "a plaintiff must first demonstrate that he possesses a 'property interest' that is constitutionally protected."  Gammoh v. City of La Habra, 395 F.3d 1114, 1122 (9th Cir. 2005) (citation omitted).  A property interest is more than a unilateral expectation, it is "a legitimate claim of entitlement."  Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972).  An entitlement is defined by independent sources such as state law, statutes,

---

[9] As discussed above, while the Court concluded that Plaintiffs sufficiently alleged retaliation against the SDPOA in SDPOA v. Aguirre, it is unclear how Defendants allegedly retaliated against the individual Plaintiffs.

1   ordinances, regulations, or express and implied contracts.  Id. at 577-78; Lucero v. Hart,

2   915 F.2d 1367, 1370 (9th Cir. 1990).

3          Plaintiffs allege in the SAC that the San Diego "City Charter, Municipal Code,

4   successive-MOUs, separate employment agreements and/or other laws, rules and/or

5   regulations" created rights in pension benefits.  (SAC ¶ 17.)  Plaintiffs allege that they

6   have rights in their pensions vested at time of their employment agreement with the

7   City.  (Id. ¶ 17, 37.)  Although the Court has noted that modifications to a pension

8   system are permissible to maintain the integrity of the system, nevertheless, the SAC

9   alleges that Defendants have unlawfully deprived, eliminated and/or reduced retirement

10  benefits and failed to fund the retirement fund as promised to Plaintiffs.  (See, e.g., id.

11  ¶¶ 17-18, 26-28, 31-32.)  Plaintiffs also allege that the Individual Defendants and

12  Aguirre met in closed sessions to plan and carry out a strategy to reduce the City's

13  unfunded pension liability by imposing unlawful changes.  (Id. ¶¶ 28, 32, 37-39.)

14  Further, Plaintiffs allege that the Individual Defendants and Aguirre met in closed

15  sessions to plan to reduce the unfunded liability and illegally transferred administration

16  of retiree healthcare benefits from SDCERS to the City, acting through Council

17  Members and Officials.  (Id. ¶ 41-42.)

18         Based on these allegations, Plaintiffs have alleged a claim of entitlement to their

19  vested pension benefits through the San Diego City Charter, ordinances, municipal

20  codes, and in the MOUs and employment agreements.  See Bd. of Regents, 408 U.S.

21  at 577-78.  Therefore, Plaintiffs have sufficiently alleged a violation under the Takings

22  Clause.

23                     **b.    Whether the Right Was Clearly Established**

24         At this time, it is not clear whether it was clearly established that the alleged acts

25  of Defendants in failing to fund the pension and in attempting to reduce the unfunded

26  liability of the pension were violations of the Takings Clause.  Accordingly, the Court

27  **DENIES** Defendants' motion to dismiss the Takings Clause claims based on qualified

28

1  immunity.[10]  Defendants are free to raise qualified immunity at the summary judgment
2  stage.

3    **4.    Conspiracy under 42 U.S.C. § 1983**
4        **a.    Violation of a Constitutional Right**

5        To state a claim for a conspiracy to violate one's constitutional rights under
6  § 1983, a "plaintiff must state specific facts to support the existence of the claimed
7  conspiracy." Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989).   The
8  heightened pleading is met if a plaintiff alleges "which defendants conspired, how they
9  conspired and how the conspiracy led to a deprivation of his constitutional rights . . . ."
10 Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997).  The Ninth Circuit has recently
11 reiterated that a plaintiff must plead "specific facts" to support a conspiracy allegation.
12 Olsen v. Idaho Bd. of Medicine, 363 F.3d 916, 929 (9th Cir. 2004); see also Jones v.
13 Tozzi,  2006 WL 2472752, *13 n.6 (E.D. Cal. Aug. 24, 2006) ("The heightened
14 pleading standard as applied to conspiracy cases does appear to still be good law in the
15 Ninth Circuit.").

16       The SAC alleges that Defendants have unlawfully deprived, eliminated and/or
17 reduced retirement benefits and used those funds to fulfill other financial obligations.
18 (See, e.g., SAC ¶¶ 26-28, 100, 104.)  Further, the SAC alleges that each Individual
19 Defendant and Defendant Aguirre met in closed sessions to plan and effectuate a plan
20 to use pension funds for pet projects and other self interests. (Id. ¶¶ 27-28.)  Plaintiffs
21 also contend that the Individual Defendants and Aguirre met in closed session to create
22 a strategy to reduce the City's unfunded pension liability by imposing unlawful
23 changes. (Id. ¶ 28, 32.)  The SAC also alleges that the City and Individual Defendants
24 concealed the underfunding.  (Id. ¶ 26, 28.)  Further, the SAC alleges that Aguirre was
25 involved in the conspiracy.  (Id. ¶ 32, 34.)   Plaintiffs also allege that all Defendants
26 / / / /

27

28       [10]   The Court notes that neither Defendants nor Plaintiffs addressed the
application of qualified immunity to Plaintiffs' 14th Amendment Due Process claim.

entered into agreements and to eliminate and/or reduce vested retirement benefits owed to SDPOA members.  (See, e.g., id. ¶¶ 27-28, 31-32.)

As to Defendant Aguirre, as the Court noted above, several of the attachments to the complaint appear inconsistent with the allegations in the SAC, particularly the conspiracy allegations concerning Aguirre.  Further, the Court has noted that modifications to the pension system are allowed under certain circumstances to maintain the integrity of the system.  Accordingly, the Court finds that Plaintiffs have failed to allege sufficiently that Aguirre conspired to violate Plaintiffs' constitutional rights under 42 U.S.C. § 1983.  As to the other Defendants, however, Plaintiffs have alleged "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of [their] constitutional rights . . . ."  See Harris, 126 F.3d at 1196.  The Court concludes that the SAC has sufficiently alleged a conspiracy to violate constitutional rights as to the Individual Defendants under § 1983.

### b.    Whether the Right Was Clearly Established

At this time, it is unclear whether the alleged acts violated clearly established law.  Accordingly, the Court **GRANTS** Defendant Aguirre's motion to dismiss the conspiracy claim based on qualified immunity, but **GRANTS** Plaintiffs leave to amend. The Court **DENIES** the Individual Defendants' motion to dismiss the conspiracy claim based on qualified immunity.  The parties may renew the qualified immunity issue at the summary judgment stage.

### F.    Immunity under Cal. Gov't Code § 820.2

Individual Defendants and Aguirre argue that they are immune from the state law claims under California Government Code § 820.2.  Plaintiffs oppose.

California Government Code section 820.2 provides: "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Cal. Gov't Code § 820.2.  This immunity applies to "basic policy decisions" or "planning" decisions, but does not apply to "operational" levels of decision making.

H & M Assocs. v. City of El Centro, 109 Cal. App. 3d 399 406-07 (1980); Masters v. San Bernardino County Employees Retirement Ass'n, 32 Cal. App. 4th 30, 46 (1995); Johnson v. State, 69 Cal. 2d 782, 794 (1968) (decision whether to parole youth authority ward is discretionary and immune but failure to warn foster parents of ward's violent tendencies is not).  If a public official is acting outside the scope of his duties, the immunity does not apply.  See Kemmerer v. County of Fresno, 200 Cal. App. 3d 1426, 1436-37 (1998).

In addition, California Government Code § 814 provides: "[n]othing in this part affects liability based on contract or the right to obtain relief other than money or damages against a public entity or public employee."  Cal. Gov't Code § 814. California courts have held that governmental immunity does not apply to a breach of contract claim.  Roe v. State of California, 94 Cal. App. 4th 64, 69 (2001); Universal-By-Products, Inc. v. City of Modesto, 43 Cal. App. 3d 145. 153 (1974).

Defendants are members of the City Council, members of SDCERS' board, City Officials, and the City Attorney.  They contend that Plaintiffs' claims are based on acts that were the result of the exercise of their discretion because they involved basic policy decisions regarding the City's budget, the funding of SDCERS, and the City's labor negotiations.  In response, Plaintiffs note that this complaint relies on identical facts to those alleged in SDPOA v. Aguirre, and in that case the Court denied a similar motion.

At this early stage of the proceedings, and because of the minimal analysis directed toward this issue, the Court is unable to determine, without discovery, whether the underlying allegations making up the state law claims were based on "basic policy" decisions or were "operational" levels of decision making.  Moreover, Defendants have not demonstrated why the result in this case should differ from that in SDPOA v. Aguirre.  Therefore, the parties may renew this issue on a motion for summary judgment.  Accordingly, the Court **DENIES** the Individual Defendants and Aguirre's motion to dismiss based on immunity under Cal. Gov't Code § 820.2.

/ / / /

1    **G.    California Tort Claims Act**

2         The City, Individual Defendants, and Aguirre argue that Plaintiffs' state law

3    claims are barred because Plaintiffs failed to comply with the procedural requirements

4    of the California Tort Claims Act ("CTCA").  See Cal. Gov't Code § 900, et seq.  In

5    response, Plaintiffs argue that their claims are exempt from the CTCA's requirements,

6    that they complied with the requirements, and that fairness and justice require the Court

7    to allow Plaintiffs' state claims to survive.

8         As a general rule, prior to filing suit for money damages against a governmental

9    agency, the CTCA requires claimants to present a formal claim to the government

10   entity.  Id. § 945.4; Dalton v. East Bay Utility Dist., 18 Cal. App. 4th 1566, 1571 (Cal.

11   Ct. App. 1993).  The CTCA exempts several types of claims from these requirements,

12   however.  Under Cal. Gov't Code § 905(c), "[c]laims by public employees for fees,

13   salaries, wages, mileage or other expenses and allowances" are exempt.  Similarly,

14   "claims for money or benefits under any public retirement or pension system" are

15   exempt.  Id. § 905(f).

16        Plaintiffs argue that their claims fall within these two exemptions, and, thus, they

17   were not required to present formal claims.  Looking at the cases interpreting these

18   provisions, however, California courts have strictly construed the exemption provisions,

19   and Plaintiffs' claims do not fall within these exemptions.  In Dalton, the court found

20   that the plaintiffs' claims, including breach of fiduciary duty and denial of equal

21   protection claims arising out of the defendants' actions related to a retirement system,

22   were barred because plaintiffs failed to comply with the CTCA.  18 Cal. App. 4th at

23   1574.  Examining the text and legislative history of the exemption provisions, the court

24   determined that the exemptions were created to address "nontortious claims 'for which

25   some other adequate claims procedure has already been devised or for which the

26   procedural protections of the Tort Claims Act is believed to be unnecessary.'"  Id.

27   (quoting Cal. Government Tort Liability Practice (Cont. Ed. Bar 1992) § 6.24 pp.

28   651-52)).  Accordingly, the court ruled that, because the plaintiffs "d[id] not seek

money due to them under the terms of the existing pension system," but instead "claim[ed] defendants treated them unfairly in administering the system and [sought] to change the 1989 administrative decisions," the plaintiffs were required to file a claim. Id. Because they had not filed a claim, the court ruled that their suit was barred.

Similarly, other cases make clear that the exemption provisions were meant to address routine claims, such as unpaid wage and benefits claims. See, e.g., Blue v. Los Angeles Unified Sch. Dist., 31 Cal. Rptr. 2d 923, 925 (Cal. Ct. App. 1994) (claim for life insurance benefits routine, and thus, fit within § 905(f)); Loehr v. Ventura County Cmty. Coll. Dist., 147 Cal. App. 3d 1071, 1080 (Cal. Ct. App. 1983) ("[W]e construe section 905, subdivision (c) as exempting from the act claims for salaries and wages which have been earned but not paid. Earned but unpaid salary or wages are vested property rights, claims for which may not be properly characterized as actions for monetary damages. Similarly, the exemption specified in section 905, subdivision (f) must be limited to benefits earned during the course of employment." (internal citations omitted)).

Plaintiffs do not allege routine unpaid wage and benefits claims here, but instead make claims more similar to those in Dalton. Like the plaintiffs in Dalton, Plaintiffs allege that Defendants unlawfully administered and altered the pension system. Accordingly, Plaintiffs' claims do not fit the statutory exemptions, and Plaintiffs were required to formally submit their claims before filing suit.

Looking at the claims Plaintiffs filed, the Court finds that Plaintiffs adequately presented their claims to the City. Plaintiffs filed two claims on September 16, 2005.[11] One claim was on behalf of individual members of SDPOA, while the other was on behalf of retired members of SDPOA. (See Plaintiffs' Request for Judicial Notice, Exs. B & C.) Both claim forms included allegations related to underfunding of pensions,

/ / / /

---

[11] Because both Plaintiffs and Defendants ask the Court to take judicial notice of these claims, the Court takes judicial notice.

breach of fiduciary duty, and related allegations.  The Court finds that these two claims were sufficient to notify the City of Plaintiffs' claims in this suit.

On January 12, 2006, the City issued letters denying each claim and providing notice that, pursuant to Government Code § 945.6, suit must be brought within six months of the date the letters were personally delivered or placed in the mail.  (See id., Exs. D & E.)  As Defendants point out, however, Plaintiffs did not file this suit until July 18, 2006, more than six months after the letters.  In response, Plaintiffs do not argue that their suit is timely, and they do not direct the Court to any authority excusing late filing.  Instead, Plaintiffs point out that they made an additional claim on August 14, 2006.  That claim, however, was made after initiation of this suit on July 18, 2006, and thus it could not serve to give notice pursuant to the CTCA.  Additionally, Plaintiffs state that their filing of SDPOA v. Aguirre in August of 2005, in combination with the claims noted above, amounts to substantial compliance with the CTCA.  Plaintiffs do not, however, direct the Court to any authority indicating that substantial compliance with the CTCA is sufficient.  Accordingly, the Court **GRANTS** the City, Individual Defendants, and Aguirre's motion to dismiss the state law claims under the CTCA.  See, e.g., Cal. Gov't Code § 950.2; id. Law Revision Comm'n Cmts. to 1965 Amd. ("This amendment makes it clear that suit against a public employee or former employee is barred when a suit against the entity is barred (1) by failure to present any claim at all or (2) by presenting a claim that is insufficient, too late or for any other reason inadequate to support an action against the employing public entity.").

Finally, Plaintiffs may be able to articulate better why their claims fit into any exemptions or exceptions to the CTCA's requirements, or they may be able to articulate why some form of tolling applies here.  Accordingly, the Court dismisses the state law claims without prejudice.

## H.      Sixth, Seventh, and Eighth Claims for Violation of Public Policy

The City and Individual Defendants, joined by Aguirre and SDCERS, move to dismiss Plaintiffs' claims for relief based on violations of public policy.  Plaintiffs bring

three claims based upon public policy violations: Sixth Claim based on California Constitution, Art. I, §§ 7, 9 and Art. XI, § 5; Seventh Claim based on California Constitution Art. XVI, § 17 (California Pension Protection Act); and Eighth Claim based on Cal. Gov't Code § 3502 (Meyers-Milias-Brown Act).

### 1.    California Constitution

Defendants argue that, although California law recognizes a claim for violations of some provisions of the California Constitution, very few violations give rise to an implied private right of action. The California Supreme Court has held that a violation of Article I, § 7(a) of the California Constitution does not create a private right of action for money damages. <u>Katzberg v. Regents of the Univ. of Cal.</u>, 29 Cal. 4th 300, 329 (2002). Defendants argue that the holding in <u>Katzberg</u> applies equally to Article I, § 9 (Contracts Clause), Article XI, § 5 (relating to city charters), and Article 16, § 17 (the Pension Protection Act of 1992). Therefore, Defendants argue that <u>Katzberg</u> precludes any recovery for damages for public policy violations under the California Constitution. In response, Plaintiffs contend that their sixth, seventh, and eighth claims for relief should survive to the extent they seek declaratory and injunctive relief.

In the SAC, Plaintiffs seek monetary damages under these public policy violation causes of action, but they also seek declaratory and injunctive relief. Accordingly, the Court **GRANTS** the motion to dismiss as to the claims for monetary damages and **DENIES** the motion to dismiss as to claims for declaratory and injunctive relief on this ground.

### 2.    Meyers-Milias-Brown Act, Cal. Gov't Code § 3502

In their Eighth claim, Plaintiffs allege a cause of action under Cal. Gov't Code § 3502, the Meyers-Milias-Brown Act ("MMB Act"), which provides that employees shall have the right to form, join, and participate in the activities of an employee organization. Defendants argue that the legislature did not indicate an intent to create a private right of action under the statute, and thus, Plaintiffs cannot assert a claim for relief under the statute.

Where a statute does not explicitly provide for a private action, the proponent must show that the legislature intended to create such a right.  See, e.g., Agricultural Ins. Co. v. Super. Ct., 70 Cal. App. 4th 385, 399-400 (1999).  Moreover, "when neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion."  Crusader Ins. Co. v. Scottsdale Ins. Co., 54 Cal. App. 4th 121, 133 (1997).  Looking at the MMB Act, the legislature set forth a statutory and administrative scheme to apply to labor relations with state and local government employees.  See, e.g., Glendale City Employees' Ass'n, Inc. v. City of Glendale, 15 Cal. 3d 328, 336 (1975) ("The Legislature designed the [MMB Act] for the purpose of resolving labor disputes.").  Further, employees may remedy violations of the MMB Act by either bringing an unfair labor practice charge with the Public Employment Relations Board, see Cal. Gov't Code §§ 3541.3(i) & 3541.5, or by bringing an action for writ of mandate in state court, depending on the type of public employee involved.  See, e.g., Coachella Valley Mosquito and Vector Control Dist. v. Cal. Pub. Employment Relations Bd., 35 Cal. 4th 1072, 1077 (2005).  Because Plaintiffs have not directed the Court to any legal authority supporting a private right of action under the MMB Act, they have not met their "heavy burden" of establishing such a right of action based upon a public policy violation.  See Crusader Ins. Co., 54 Cal. App. 4th at 133.  Accordingly, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' Eighth claim for relief.

**I.     Brown Act, Cal. Gov't Code §§ 54950, et seq.**

In their Ninth claim, Plaintiffs allege that Aguirre, the City, Council Members, City Officials, and Doe Defendants violated the Brown Act, Cal. Gov't Code §§ 54950, et seq., when they held the closed session meetings alleged in the SAC.  The City, Individual Defendants, and Aguirre move to dismiss this claim, and Plaintiffs oppose, arguing that they have pleaded sufficiently a cause of action under the Brown Act.

/ / / /

"The purpose of the Brown Act is to facilitate public participation in local government decisions and to curb misuse of democratic process by secret legislation by public bodies." Boyle v. City of Redondo Beach, 70 Cal. App. 4th 1109, 1116 (1999). The Brown Act requires that local legislative bodies hold "open meetings." Id. California Government Code § 54962 provides, "[e]xcept as expressly authorized by this chapter . . . no closed session may be held by any legislative body of any local agency." Cal. Gov't Code § 54962.

Nevertheless, exceptions exist to the prohibition against closed sessions articulated in § 54962, so long as the closed session items are described in accordance with § 54954.5. Section 54957.6, also known as the "labor negotiations exception" allows a closed session regarding "salaries, salary schedules, or compensation paid in the form of fringe benefits of its represented . . . employees, and, for represented employees, any other matter within the statutorily provided scope of representation." Cal. Gov't Code § 54957.6(a). In addition, a closed session may include discussion regarding any agency's available funds and funding priorities. Id. Another exception provides that a closed session may be held to consider "the purchase or sale of particular, specific pension fund investments." Id. § 54956.81. Further, a closed session may be held concerning a conference with legal counsel regarding existing and anticipated litigation. Id. § 54956.9.

The only specific meeting Plaintiffs allege is a January 14, 2005 meeting between Aguirre and various union officials. (See SAC ¶ 29.) Defendants contend that because the Brown Act only applies to legislative bodies, and because the City Attorney is not a legislative body, this claim must fail. Plaintiffs have not addressed this argument in their response. Absent any legal authority that a City Attorney is considered a "legislative body," the Court **GRANTS** Defendants' motion to dismiss regarding this meeting.

Plaintiffs also allege that "Defendants, at various times . . . continued meeting in 'closed sessions' to plan and effectuate the continued use of the Public Pension Funds

1  for 'pet projects' and personal gain," but they do not specify any other meetings.  (<u>Id.</u>

2  ¶ 27.)  Further, Plaintiffs state in conclusory fashion that these other meetings did not

3  fit into any Brown Act exceptions.  (<u>See, e.g.</u>, <u>id.</u> ¶ 121 ("No other exemption under the

4  Brown Act applies because, for example and among other reasons, none of the alleged

5  closed sessions pertained to the purchase or sale of a retirement fund nor were they

6  conducted as conferences regarding litigation under California Government Code §§

7  54957.81, 54956.9.").)  Even accepting the allegations in the SAC as true, Plaintiffs'

8  vague allegations do not adequately state a claim under the Brown Act, as Defendants

9  cannot determine which meetings allegedly violated the Brown Act, which parties were

10  allegedly involved, and whether any exceptions to the prohibition on closed meetings

11  apply.  Accordingly, the Court **DISMISSES** Plaintiffs' Ninth claim with leave to

12  amend.

13  **J.    Conversion and Conversion of Trust**

14       In Plaintiffs' Twelfth claim, they allege conversion of trust against the City,

15  Council Members, SDCERS, Trustees, and Doe Defendants.  In Plaintiffs' Thirteenth

16  claim, they allege conversion against the same Defendants.   The City, Individual

17  Defendants, and SDCERS all seek to dismiss these claims.  Plaintiffs oppose.

18       "Conversion is the wrongful exercise of dominion over the property of another.

19  The elements of a conversion are the plaintiff's ownership or right to possession of the

20  property at the time of the conversion; the defendant's conversion by a wrongful act or

21  disposition of property rights; and damages."  <u>Farmers Ins. Exchange v. Zerin</u>, 53 Cal.

22  App. 4th 445, 451 (1997).  "Where plaintiff neither has title to the property alleged to

23  have been converted, nor possession thereof, he cannot maintain an action for

24  conversion."  <u>Fischer v. Machado</u>, 50 Cal. App. 4th 1069, 1072 (1996).  Money can be

25  subject to a claim of conversion if it is specifically identified.  <u>Id.</u> at 452.  If money is

26  not specifically identified, then the proper action is in contract or for debt.  <u>Baxter v.</u>

27  <u>King</u>, 81 Cal. App. 192, 194 (1927).  A party need not demonstrate absolute ownership

28  over the property, it need only show that it is "entitled to immediate possession at the

time of conversion." <u>Farmers Ins. Exchange</u>, 53 Cal. App. 4th at 452 (citation omitted). A mere contractual right to payment is not enough. <u>Id.</u> In addition, a suit to recover personal property cannot be maintained if is not in the possession of defendant at the beginning of the suit. <u>Faulkner v. First Nat'l Bank</u>, 130 Cal. 258, 260 (1900).

A cause of action for conversion of trust requires a fiduciary relationship. <u>See</u> <u>Strasburg v. Odyssey Group, Inc.</u>, 51 Cal. App. 4th 906, 916-17 (1996) (conversion of trust); <u>Bennett v. Hibernia</u>, 47 Cal.2d 540, 561 (1956) (conversion of trust). A fiduciary relationship exists between a trustee who administers a pension plan and its beneficiaries. <u>Masters</u>, 32 Cal. App. 4th at 43-45.

The City and Individual Defendants argue that the Court should dismiss these claims because most Plaintiffs are active officers and are not currently entitled to any pension benefits or retiree medical benefits. Further, as to the DROP Plaintiffs, the City and Individual Defendants contend that these Plaintiffs have received all of the benefits due to them. At most, they argue that Plaintiffs have a contractual right to payment in the future, which is insufficient to give rise to a cause of action for conversion or conversion of trust. Plaintiffs do not address Defendants' arguments, but simply note that the Court granted a motion to dismiss on similar grounds in <u>SDPOA v. Aguirre</u>. Further, Plaintiffs ask the Court for leave to amend should it grant Defendants' motion.

Similarly, SDCERS, joined by the Individual Defendants, argues that Plaintiffs have failed to plead sufficiently their conversion and conversion of trust claims against SDCERS. In particular, SDCERS argues that Plaintiffs have failed to allege that SDCERS converted to its own use or exercised dominion over the money or property of Plaintiffs. Rather, according to SDCERS, Plaintiffs' allegations focus on actions of the City and Individual Defendants. In response, Plaintiffs argue that SDCERS' liability is premised on its knowingly having received stolen money from the City that the City unlawfully took from Plaintiffs. Plaintiffs do not, however, direct the Court to allegations in the SAC stating that SDCERS converted Plaintiffs' property or money. (<u>See, e.g.</u>, SAC ¶¶ 137-138, 142.) Further, to the extent Plaintiffs attempt to construe

their claim as one based on receipt of stolen property, the SAC does not contain such allegations.

In sum, the Court **GRANTS** Defendants' motions to dismiss the conversion and conversion of trust claims, but allows Plaintiffs leave to amend.

**K.    Fraud**

In their Fourteenth claim, Plaintiffs bring an action for fraud against the City, Council Members, and Officials. The City and Individual Defendants move to dismiss this claim, arguing that Plaintiffs have failed to plead fraud adequately. Plaintiffs oppose.

Under California law, a plaintiff must plead: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages." Okun v. Morton, 203 Cal. App. 3d 805, 828 (1988). A defendant must fully understand the nature of the charge. Stansfield v. Starkey, 220 Cal. App. 3d 59, 73 (1990). Plaintiff must allege "how, when, where, to whom, and by what means the representations were tendered." Id. (citation omitted). The Court notes that under Rule 9 of the Federal Rules of Civil Procedure, a claim of fraud "shall be stated with particularity." Fed. R. Civ. P. 9(b).

Looking at the SAC, Plaintiffs have failed to state their claim with sufficient particularity. For example, Plaintiffs allege: "During labor negotiations that lead to the adoption of the 2003-2005 MOU, the City's labor negotiator represented to LBFO-Plaintiffs' employee representatives from the SDPOA that the City agreed to pick-up 10% of the contributions those Plaintiffs were required to make to SDCERS in lieu of paying those Plaintiffs a wage increase." (SAC ¶ 146.) Plaintiffs also point to a general allegation that Defendants "continued meeting in closed session . . . [which] caused Defendants' failure to comply with legally mandated funding requirements regarding . . . City's Pick-up." (Id. ¶ 28.) Plaintiffs fail, however, to state with particularity when these representations were allegedly made, the content of some of

1   the representations, and they fail to allege sufficient facts to support their position that

2   Defendants knew these representations were false.

3          In sum, the allegations to which Plaintiffs direct the Court fail to specify

4   sufficiently "how, when, where, to whom, and by what means the representations were

5   tendered."  See Stansfield, 220 Cal. App. 3d at 73.  Accordingly, the Court **GRANTS**

6   Defendants' motion to dismiss as to fraud with leave to amend.

7   **L.     Breach of Contract**

8          In their Fifteenth claim, Plaintiffs bring a breach of contract action against

9   Defendant City and SDCERS.  Defendant City and SDCERS move to dismiss.

10  Plaintiffs oppose, arguing that their allegations are sufficient.

11         In a breach of contract claim, plaintiff must allege (1) a contract, (2) plaintiff's

12  performance, (3) defendant's breach, and (4) damages.  McDonald v. John P. Scripps

13  Newspaper, 210 Cal. App. 3d 100, 104 (1989).  A third-party beneficiary, who is not

14  a signatory to a contract, may sue for breach of contract if the contract was made for his

15  or her direct benefit.  Tyler v. Cuomo, 236 F.3d 1124, 1135 (9th Cir. 2000).

16         **1.     Breach of Contract as to City**

17         The SAC alleges that " in exchange for their services to the City, Plaintiffs were

18  promised and are otherwise guaranteed and vested with the right to the retirement

19  benefits set forth in the City Charter, Municipal Code, successive-MOUs, separate

20  employment agreements and/or other laws, rules and/or regulations." (SAC ¶¶ 13, 158.)

21  The SAC maintains that, according to an MOU between the City and SDPOA, the City

22  was required to make contributions into the retirement fund.  (Id. ¶¶ 19-25.)  The SAC

23  also states that certain members of the SDPOA who enrolled in the DROP program

24  entered into a contract of employment with the City.  (Id. ¶¶ 22-25.)  Further, Plaintiffs

25  assert that in 1981 there was an agreement between the City, state, and federal

26  government, pursuant to Section 218 of the Social Security Act, 42 U.S.C. § 418, to

27  replace Social Security benefits in return for the City providing Retiree Medical

28  / / / /

Benefits for which contributions would be administered by SDCERS.  (<u>Id.</u> ¶ 43.)  MP2 was an agreement between the City and SDCERS.  (<u>Id.</u> ¶ 27, Ex. G at 2.)

These allegations specify contracts the City allegedly breached.  Therefore, the Court **DENIES** the City's motion to dismiss on this ground.

### 2.  Breach of Contract as to SDCERS

SDCERS, joined in part by the City and in part by the Individual Defendants, moves to dismiss the breach of contract claim, arguing that Plaintiffs have failed to allege specific contracts between Plaintiffs and SDCERS that SDCERS has breached. Plaintiffs oppose, arguing that SDCERS is a party to Plaintiffs' employment contracts as a matter of law.

While Plaintiffs present legal theories regarding liability, looking at the allegations concerning SDCERS in the SAC, Plaintiffs have failed to allege sufficiently the contracts to which SDCERS was a party and the contracts SDCERS allegedly breached.  Other than MP2, which attachments to the SAC indicate was an agreement between the City and SDCERS, (<u>see</u> <u>id.</u>), the SAC does not identify the contracts to which SDCERS was allegedly a party.  Further, to the extent Plaintiffs seek to hold SDCERS liable for breach of contract solely because it is the only entity capable of providing an actuarially sounds pension, they have not explained how this comports with the requirement under California law that "[b]reach of contract cannot be made the basis of an action for damages against defendants who did not execute it and who did nothing to assume its obligations."  <u>Gold v. Gibbons</u>, 178 Cal. App. 2d 517, 519 (1960). Therefore, the Court **GRANTS** SDCERS' motion to dismiss the breach of contract claim, but **GRANTS** Plaintiffs leave to amend.

### M.  Interference with Contractual Relations

To state a claim for interference with contractual relations, a plaintiff must show "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or

1   disruption of the contractual relationship; and (5) resulting damages." <u>Sole Energy, Co.</u>

2   <u>v. Petrominerals Corp.</u>, 128 Cal. App. 4th 212, 237-38 (2005).  In an action for inducing

3   a breach of contract, an action may not be brought against a party to the contract.

4   <u>Dryden v. Tri-Valley Growers</u>, 65 Cal. App. 3d 990, 999 (1977).  If such an action is

5   brought, it is in essence, a breach of contract claim.  <u>Id.</u>

6       Defendant City, Individual Defendants, SDCERS, and KPMG contend that the

7   Second Amended Complaint fails to identify the contracts interfered with and fails to

8   specify which Defendants are the contracting parties.  Plaintiffs oppose.

9       Looking at the SAC, Plaintiffs only allegation states: "Defendants City, Counsel

10  [sic] Members, Officials, SDCERS, Trustees, KPMG, and Does were aware Plaintiffs

11  are parties to or beneficiaries of the contracts and multi-party agreements alleged above,

12  and Defendants' aforementioned conduct intentionally and purposefully interfered with

13  these contracts, third-party beneficiary rights and multi-party agreements."  (SAC ¶

14  155.)  Plaintiffs do not specify the particular contracts with which Defendants allegedly

15  interfered.  Moreover, Plaintiffs do not correlate allegedly wrongful conduct on the part

16  of particular Defendants to particular contracts.  Further, Plaintiffs do not allege that

17  any particular Defendant proximately caused any particular contractual disruption.

18  Rather, Plaintiffs lump all Defendants together.[12]

19      In sum, Plaintiffs' allegations do not provide a short and plain statement of the

20  claim sufficient to provide each Defendant with fair notice of Plaintiffs' claim and the

21  grounds on which the claim is based.  <u>See, e.g.</u>, <u>Leatherman v. Tarrant County</u>

22  <u>Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 168 (1993).  Accordingly,

23  _____

24      [12] Additionally, the Court notes that undifferentiated pleading against multiple
    defendants is improper.  <u>See, e.g.</u>, <u>In re Sagent Tech., Inc.</u>, 278 F. Supp. 2d 1079, 1094
25  (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not
    indicate which individual defendant or defendants were responsible for which alleged
26  wrongful act.  Plaintiffs plead no facts showing how defendants that joined the board
    in late 2000 or in 2001 could be responsible for events that occurred in 1999, or how
27  defendants that left Sagent in 2000 could have any connection with actions taken, or not
    taken, in 2001."); <u>Gauvin v. Trombatore</u>, 682 F. Supp. 1067, 1071  (N.D. Cal. 1988)
28  (lumping together multiple defendants in one broad allegation fails to satisfy notice
    requirement of Fed. R. Civ. P. 8(a)(2)).

the Court **DISMISSES** Plaintiffs' Interference with Contractual Relations claim with leave to amend.

**N.    First Amendment Retaliation as to Aguirre**

Aguirre, joined by the City and Individual Defendants, argues that the SAC does not state a First Amendment Retaliation claim against Aguirre.   As discussed previously, it is unclear how Aguirre allegedly retaliated against the individual Plaintiffs.   Further, as indicated above, some of the attachments to the SAC appear inconsistent with the allegations in the SAC.   Accordingly, the Court **GRANTS** Aguirre's motion to dismiss the First Amendment Retaliation claim, but **GRANTS** Plaintiffs leave to amend.

**O.    Conspiracy**

**1.    Conspiracy as to Aguirre**

Aguirre, joined by the City and Individual Defendants, argues that the SAC does not state a conspiracy between Aguirre and the other Defendants.   Further, Aguirre argues that the allegations demonstrate no single conspiracy.  In support, Aguirre argues that exhibits attached to the complaint prove that he has expended substantial time and energy bringing to the public facts related to the pension fund crisis.   As discussed above, several of the attachments appear inconsistent with the conspiracy allegations as to Aguirre.   Accordingly, the Court concludes that Plaintiffs have failed to state a claim for conspiracy to violate civil rights against Aguirre.   Thus, the Court **GRANTS** Defendant Aguirre's motion to dismiss on this ground, but **GRANTS** Plaintiffs leave to amend.

**2.    Conspiracy as to SDCERS**

SDCERS, joined by the City and Individual Defendants, argues that the SAC fails to plead facts sufficient to state a conspiracy claim against SDCERS.   Plaintiffs oppose, largely relying on this Court's ruling in SDPOA v. Aguirre.

To state a claim for a conspiracy to violate one's constitutional rights under § 1983, a "plaintiff must state specific facts to support the existence of the claimed

1    conspiracy." Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989).   The

2    heightened pleading is met if plaintiff alleges "which defendants conspired, how they

3    conspired and how the conspiracy led to a deprivation of his constitutional rights . . . ."

4    Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997).  The Ninth Circuit has recently

5    reiterated that a plaintiff must plead "specific facts" to support a conspiracy allegation.

6    Olsen v. Idaho Bd. of Medicine, 363 F.3d 916, 929 (9th Cir. 2004); see also Jones v.

7    Tozzi,   2006 WL 2472752, *13 n.6 (E.D. Cal. Aug. 24, 2006) ("The heightened

8    pleading standard as applied to conspiracy cases does appear to still be good law in the

9    Ninth Circuit.").

10        Looking at the SAC, Plaintiffs have failed to meet this heightened pleading

11   standard regarding a conspiracy claim against SDCERS.  While Plaintiffs point to this

12   Court's ruling on SDCERS' motion to dismiss in SDPOA v. Aguirre, the allegations

13   in the present case do not contain sufficient detail of SDCERS' role in the alleged

14   conspiracy.  For example, Plaintiffs have not alleged when SDCERS entered into the

15   conspiracy, how it entered into the conspiracy, and how it participated in the

16   conspiracy.  Thus, the general allegations to which Plaintiffs direct the Court do not

17   make out a claim for conspiracy.  (See, e.g., SAC ¶¶ 26-27, 41-42, 58.)  Accordingly,

18   the Court **GRANTS** SDCERS' motion to dismiss on this ground with leave to amend.

19   **P.    Section 1983 Claims as to KPMG**

20        To maintain a § 1983 civil rights action, a plaintiff must allege: "(1) that the

21   conduct complained of was committed by a person acting under color of state law; and

22   (2) that the conduct deprived the plaintiff of a constitutional right." Balistreri, 901 F.2d

23   at 699.  Additionally, where the defendant is a private entity, a plaintiff must allege

24   "that there is such a 'close nexus between the State and the challenged action' that

25   seemingly private behavior 'may be fairly treated as that of the State itself.'"

26   Brentwood Academy v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)

27   (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 349 (1974)).  The Ninth Circuit

28   has recognized several approaches to conducting the state action determination. George

v. Pacific-CSC Work Furlough, 91 F.3d 1227, 1230 (9th Cir. 1996); see also Lee v. Katz, 276 F.3d 550, 554 (in light of Brentwood Academy, noting that satisfaction of one approach may be sufficient to find state action, absent countervailing considerations). First, a private entity's action may constitute state action where the action is traditionally and exclusively performed by the State. Id. Second, under the nexus approach, state action may be found where the state is extremely connected to the challenged action. Id. at 1230-31. Third, under the joint action approach, private actors can be state actors if they willfully participate in joint action with the state. Id. at 1231. Finally, under the state compulsion approach, a private entity acts as the state when some state law or custom requires a certain course of action. Id. at 1232. With all of the approaches, identifying the challenged action is important, as an entity may be a state actor for some purposes, but not for others. See, e.g, Lee, 276 F.3d at 555 n.5 (citing George, 91 F.3d at 1250).

KPMG argues that, because it is a private entity, Plaintiffs' § 1983 claims against it must fail, as Plaintiffs have not alleged sufficiently that it engaged in any state action. In response, Plaintiffs make several arguments.[13] First, Plaintiffs state that KPMG is performing a public function, as the City is required to perform the auditing services it delegated to KPMG. Second, Plaintiffs maintain that KPMG should be considered a state actor because it meets the joint action test described above. Examining the SAC, Plaintiffs have not alleged facts indicating that KPMG's actions should be treated as state action.

Under the public function analysis, Plaintiffs have not alleged, and the cases they cite do not hold, that auditing and accounting services are functions traditionally and exclusively performed by the State. Cf. Lee, 276 F.3d at 554 (regulating speech in public forum is both traditional and exclusive public function). Instead, the documents Plaintiffs attached to the complaint indicate that KPMG was hired to perform an

---

[13] In their papers and at oral argument, Plaintiffs also complain that they do not have access to the City's audited financial reports for 2003. By the time of the amended complaint, the Court anticipates the release of the audited 2003 financial reports.

1  independent audit of financial statements.  Plaintiffs do not explain how an independent

2  audit of financial statements constitutes state action.

3  Under the joint action approach, contrary to their contention, Plaintiffs have not

4  alleged that "the state has 'so far insinuated itself into a position of interdependence

5  with [the private entity] that it must be recognized as a joint participant in the

6  challenged activity.'" Gorenc v. Salt River Project Agric. Improvement & Power Dist.,

7  869 F.2d 503, 506 (9th Cir. 1989) (citing Burton v. Wilmington Parking Authority, 365

8  U.S. 715, 725 (1961)).  Instead, as just noted, the exhibits Plaintiffs attach to the

9  complaint indicate that the City hired KPMG to perform an independent audit of

10 financial statements.  In their opposition, Plaintiffs argue that several of the conspiracy

11 allegations in the SAC demonstrate that KPMG was a joint participant with the City,

12 and thus, should be considered a state actor.  (SAC ¶¶ 26-28, 100.)  These conspiracy

13 allegations do not detail actions by KPMG, however, and even assuming they

14 sufficiently allege a conspiracy, they do not connect KPMG to the allegations making

15 up Plaintiffs' Contracts Clause, Takings Clause, and 14th Amendment due process

16 violations.  Finally, pointing to the general rule that a co-conspirator may be held liable

17 for injuries caused by the conspiracy even before he became a member of the

18 conspiracy, Plaintiffs argue that this principle and the conspiracy allegations in the SAC

19 are sufficient to allege that KPMG is a state actor under the joint action approach.  See,

20 e.g., de Vries v. Brumback, 53 Cal. 2d 643, 648 (1960) (setting forth California law on

21 conspiracy).  While a person may be held civilly liable for previous acts committed by

22 others under conspiracy law, that general rule of law does not address the crucial issue

23 here, whether actions by a private entity may be considered those of the state for

24 purposes of liability under § 1983.  Thus, Plaintiffs have not alleged that KPMG should

25 be considered a state actor under the joint action analysis.

26 In sum, under any of the approaches described above, Plaintiffs have not alleged

27 a relationship between the challenged actions and KPMG, let alone such a close

28 connection that "seemingly private behavior 'may be fairly treated as that of the State

1    itself.'" <u>Brentwood Academy</u>, 531 U.S. at 295.  Each of Plaintiffs' § 1983 claims

2    relates to alleged underfunding of pensions and the City's compensation decisions in

3    2005 and 2006.  (<u>See, e.g.</u>, SAC ¶¶ 78, 82, 85, 89, 92, 93, 100, & 104.)  As to KPMG,

4    however, Plaintiffs do not allege KPMG had any involvement with any of the funding

5    decisions before it was hired by the City, and they do not allege that KPMG was

6    involved in any way with compensation decisions in 2005 and 2006.  (<u>See, e.g.</u>, <u>id.</u> ¶¶

7    26-28 (underfunding allegations) & ¶¶ 29-49 (compensation decisions).)  Instead,

8    Plaintiffs allege that KPMG acted in concert with the City in concealing information.

9    (<u>See, e.g.</u>, <u>id.</u> ¶ 15.)  Taking these allegations as true for purposes of this motion to

10   dismiss, they fall short of showing the close relationship necessary to consider KMPG

11   a state actor for purposes of § 1983 liability, as Plaintiffs have not established any nexus

12   between the challenged funding actions and KPMG.  <u>Cf.</u> <u>Lee</u>, 276 F.3d at 555 n.5

13   (identifying challenged action important in analysis).

14           Although Plaintiffs include additional allegations in their § 1983 claim based on

15   due process violations, they do not connect those allegations to KPMG.  For example,

16   Plaintiffs allege that Defendants violated Plaintiffs' due process rights when they acted

17   in unlawful closed door sessions to decide to underfund the retirement fund, when they

18   failed to follow proper procedure to meet and confer before modifying wages and

19   benefits, and when they failed to follow the Public Safety Officers Bill of Rights in

20   reducing pay of certain Plaintiffs.  (<u>Id.</u> ¶¶ 92, 93.)  Plaintiffs do not, however, allege that

21   KPMG was involved in any of these actions.

22           Thus, Plaintiffs have not alleged facts indicating that KPMG should be

23   considered a state actor for purposes of § 1983 liability.  Therefore, the Court

24   **DISMISSES** Plaintiffs' § 1983 claims against KPMG based upon alleged violations of

25   the Contracts Clause, Takings Clause, and the 14th Amendment Due Process Clause.

26   The Court **GRANTS** Plaintiffs leave to amend.

27           Regarding Plaintiffs' § 1983 conspiracy claim against KPMG, private parties

28   may be held liable under § 1983 for conspiracy to violate civil rights "if they willfully

1  participate in joint action with state officials to deprive others of constitutional rights."
2  United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1540 (9th Cir.
3  1989).  In addition to the general pleading requirements for conspiracy claims, to allege
4  sufficiently a conspiracy between state actors and a private party, a plaintiff must
5  demonstrate "an agreement or meeting of the minds to violate constitutional rights."
6  Id. at 1540-41 (quotations omitted); Mendocino Envtl. Ctr. v. Mendocino County, 192
7  F.32d 1283, 1301 (9th Cir. 1999) (quoting Phelps Dodge).  To be liable, "each
8  participant in the conspiracy need not know the exact details of the plan, but each
9  participant must at least share the common objective of the conspiracy." Phelps Dodge,
10  865 F.2d at 1541.

11          KPMG argues that the Court should dismiss the § 1983 conspiracy claim because
12  Plaintiffs have failed to meet the heightened pleading requirement for conspiracy.  In
13  response, Plaintiffs direct the Court to the allegation that KPMG and the city conspired
14  to conceal wrongdoing and to their general conspiracy allegations against the City,
15  Aguirre, and other Defendants.  (SAC ¶¶ 15, 26-28, 100.)  Primarily, however,
16  Plaintiffs rely on this Court's ruling denying the City's motion to dismiss the conspiracy
17  claims in SDPOA v. Aguirre.  KPMG is not a party in that case, and more importantly,
18  the allegations against the City in that case are different than the allegations against
19  KPMG here.  As discussed above, Plaintiffs' allegations do not connect KPMG to any
20  of the alleged underfunding actions and compensation decisions.  In fact, Plaintiffs only
21  specific allegations regarding KPMG's misconduct state that KPMG acted in concert
22  with the City to conceal the City's financial information and that it took concerted
23  action with the City to interfere with pension rights by concealing information and
24  workpapers. (Id. ¶ 15.)  In sum, other than in conclusory language, Plaintiffs have not
25  alleged material facts demonstrating any "meeting of the minds to violate constitutional
26  rights" against KPMG.  Accordingly, the Court **DISMISSES** Plaintiffs' § 1983
27  conspiracy claim against KPMG with leave to amend.
28  / / / /

**Q.     Declaratory Relief as to KPMG**

KPMG argues that the Court should dismiss any claims for declaratory relief against it because none of the allegations have anything to do with KPMG.  Plaintiffs oppose.

In their claim for declaratory relief, Plaintiffs ask the Court to enter declaratory judgment on eighteen separate alleged controversies.  (See SAC ¶ 159.1.)  Most of the requests relate to actions by the City, and thus, do not involve KPMG.  Nevertheless, in three of their requests, Plaintiffs seek declaratory judgment against "Defendants," generally.  (Id. ¶ 159.1(b), (k) & (r).)  Looking at those three requests, however, Plaintiffs do not allege that KPMG had any involvement with the disputes.

First, Plaintiffs request a determination whether any Defendant breached a fiduciary duty owed to Plaintiffs by allowing retirement fund contribution to be deferred, delayed or diverted.  (Id. ¶ 159.1(b).)  Plaintiffs do not, however, allege that KPMG owed such a fiduciary duty to Plaintiffs or how any of KPMG's actions related to any funding decisions.  Second, Plaintiffs ask the Court to determine whether any Defendant owed fiduciary duties and to whom those duties were owed, to determine the contours of any such duties, and to determine to what extent any breaches of fiduciary duties damaged the financial soundness of the retirement fund.  (Id. ¶ 159.1(k).)  Even assuming this broad request sets forth an actual controversy, see 28 U.S.C. § 2201(a), Plaintiffs do not allege KPMG owed Plaintiffs any fiduciary duties, and they do not allege how any of KPMG's activities related to damaging the financial soundness of the retirement fund.  Third, Plaintiffs ask the Court to determine whether the City or other Defendants violated the Brown Act.  (FAC ¶ 159.1(r).)  As discussed above, the Brown Act, Cal. Gov. Code § 54950 et seq., generally requires local government bodies to conduct meetings in public.  Plaintiffs do not allege, however, that KPMG is subject to the Brown Act or that it somehow violated the act.  Thus, Plaintiffs provide no basis for this claim for declaratory relief against KPMG.

/ / / /

In sum, Plaintiffs have failed to allege facts sufficient to state a claim for declaratory relief against KPMG. Accordingly, the Court **DISMISSES** Plaintiffs' claims for declaratory relief against KPMG with leave to amend.

**R.      Stay under <u>Leyva v. Certified Grocers of California</u>**

Relying on the Ninth Circuit's decision in <u>Leyva v. Certified Grocers of California</u>, 593 F.2d 857 (9th Cir. 1979), Defendants City of San Diego, Individual Defendants, Aguirre, and SDCERS ask the Court to stay Plaintiffs' pension underfunding claims in favor of the pending civil and criminal actions[14] pending in state court. In opposition, Plaintiffs state that they cannot determine which causes of action Defendants seek to stay, and that in any event, Plaintiffs oppose a stay because the other pending state court cases do not seek to protect the rights of Plaintiffs.

The Court has discretion to stay an action under <u>Leyva</u>. <u>Id.</u> at 863. A court may stay an action "pending resolution of independent proceedings which bear upon the case" if "it is efficient for its own docket and the fairest court for the parties." <u>Id.</u> The rule applies to proceedings that are judicial, administrative, or arbitral in character. <u>Id.</u>

The Court has given considerable thought as to whether a stay is appropriate in this case. The Court concludes that it would not be efficient and fair to the parties to stay the action at this time, and it declines to exercise its discretion to stay the case under <u>Leyva</u>. Nevertheless, Defendants may raise this issue again at a later date.

**S.      Stay or Dismissal Under <u>Colorado River Water Conservation Dist. v. United States</u>**

SDCERS, joined by the City and Individual Defendants, asks the Court to stay or dismiss the pension underfunding claims under the <u>Colorado River</u> doctrine. In

////

---

[14] The Court notes that, in <u>Lexin, et al. v. Superior Court of San Diego County</u>, S147143 (November 29, 2006), the California Supreme Court directed the Court of Appeal to enter an order requiring the Superior Court to show cause why the relief requested in the petition, concerning whether pension benefits are part of an official's salary, should not be granted. The Court of Appeal entered an order to show cause on December 8, 2006. <u>Lexin, et al. v. The People</u>, D049251 (December 8, 2006).

1    support, SDCERS contends that the consolidated cases before Judge Jeffrey Barton in

2    state court are focused on the same pension underfunding issues.

3        In <u>Colorado River Water Conservation District v. United States</u>, the Supreme

4    Court noted that, in exceptional situations, a district court may stay or dismiss a federal

5    suit due to the presence of a concurrent state proceeding for reasons of "wise judicial

6    administration."  424 U.S. 800, 817-18 (1976).  Further highlighting the exceptional

7    nature of dismissal for these reasons, the Court stated that the circumstances justifying

8    dismissal on these grounds are "considerably more limited than the circumstances

9    appropriate for abstention."  <u>Id.</u> at 818.  The Court noted several factors for district

10   courts to consider: (1) whether a state or federal court has first exercised jurisdiction

11   over property; (2) inconvenience of the federal forum; (3) desirability of avoiding

12   piecemeal litigation; and (4) the order in which jurisdiction was obtained by the two

13   courts.  <u>Id.</u>; <u>see also</u> <u>40235 Washington St. Corp. v. W.C. Lusardi</u>, 976 F.2d 587, 588

14   (9th Cir. 1992).  In a subsequent case, the Supreme Court added two additional factors

15   to the analysis: (5) whether federal or state law controls the decision on the merits; and

16   (6) whether the state court can adequately protect the rights of the parties.  <u>Moses H.</u>

17   <u>Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24, 27 (1983); <u>see also</u> <u>W.C.</u>

18   <u>Lusardi</u>, 976 F.2d at 588.  "These factors are to be applied in a pragmatic and flexible

19   way, as part of a balancing process rather than as a 'mechanical checklist.'"  <u>American</u>

20   <u>Int'l Underwriters, (Phillipines), Inc. v. Continental Ins. Co.</u>, 843 F.2d 1253, 1257 (9th

21   Cir.1988) (quoting <u>Moses Cone</u>, 460 U.S. at 16).

22       Examining the posture of this case, the Court declines to stay or dismiss the case

23   under the <u>Colorado River</u> doctrine at this time.  The Court anticipates that Judge Barton

24   will be ruling on certain related issues in the near future.  The effect of those rulings on

25   this action is unclear at this time.  Further, this case also involves causes of action under

26   federal law not asserted in the state court actions, and federal law controls some of the

27   issues in this case.  As the Ninth Circuit has observed, "conflicting results, piecemeal

28   litigation, and some duplication of judicial effort is the unavoidable price of preserving

access to the federal relief which section 1983 ensures." Tovar v. Billmeyer, 609 F.2d 1291, 1293 (9th Cir. 1979).  Importantly, "a district court may enter a *Colorado River* stay order only if it has 'full confidence' that the parallel state proceeding will end the litigation."  Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 913 (9th Cir. 1993) (citing Gulfstream Aerospace Corp. v. Mayacamas Corp., 485 U.S. 271, 277 (1988)).  At this stage, the Court declines to enter a stay under Colorado River. Defendants may renew their arguments at a later date.

### Conclusion

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Defendant City of San Diego and the Individual Defendants' motion to dismiss; **GRANTS** in part and **DENIES** in part Defendant Michael Aguirre's motion to dismiss; **GRANTS** in part and **DENIES** in part Defendant SDCERS's motion to dismiss; and **GRANTS** Defendant KPMG's motion to dismiss.  Additionally, the Court **GRANTS** Plaintiffs 30 days from the date this Order is stamped "Filed" to file a third amended complaint that addresses the deficiencies of the pleading set forth above.

IT IS SO ORDERED.

DATED:  December 13, 2006

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

1   Copies To:
    Gregory Peterson
2   Christopher Nissen
    Castle, Petersen & Krause, LLP
3   4675 MacArthur Court, Suite 1250
    Newport Beach, CA  92660
4
    Peter Benzian
5   Latham & Watkins
    600 West Broadway, Suite 1800
6   San Diego, CA
7   Rodney Perlman
    Wehner & Perlman
8   1919 Santa Monica Blvd, Suite 210
    Santa Monica, CA  90404
9
    Reginald Vitek
10  Matthew Mahoney
    Seltzer Caplan, McMahon & Vitek
11  750 B Street, Suite 2100
    San Diego, CA  92101
12
    Robert Gooding
13  Martha Gooding
    Stephen Cook
14  Howrey, LLP
    2020 Main Street, Suite 1000
15  Irvine, CA 92614

16

17

18

19

20

21

22

23

24

25

26

27

28

06-cv-1451