**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ERICA AARON, et al., Plaintiffs, vs. MICHAEL AGUIRRE, et al., Defendants. | CASE NO. 06-CV-1451-H(POR) **ORDER: (1) GRANTING IN PART AND DENYING IN PART DEFENDANT CITY OF SAN DIEGO AND INDIVIDUAL DEFENDANTS' MOTION TO DISMISS; (2) GRANTING IN PART AND DENYING IN PART DEFENDANT MICHAEL AGUIRRE'S MOTION TO DISMISS; (3) GRANTING DEFENDANT SDCERS' MOTION TO DISMISS; AND (4) GRANTING DEFENDANT KPMG'S MOTION TO DISMISS** |

On December 13, 2006, the Court granted in part and denied in part motions to dismiss various claims from Plaintiffs' Second Amended Complaint ("SAC"), and granted Plaintiffs leave to amend to attempt to cure certain deficiencies. (Doc. No. 100.) On January 12, 2007, Plaintiffs, over 1600 individual police officers, filed their Third Amended Complaint ("TAC") against Defendants, alleging claims under 42 U.S.C. § 1983 and various state law claims. (Doc. No. 109.) On January 22, 2007,

Defendant KPMG, LLP ("KPMG") filed a motion to dismiss the TAC. (Doc. No. 112.) On January 29, 2007, Defendant Michael Aguirre filed a motion to dismiss the TAC. (Doc. No. 115.) Defendant City of San Diego ("City") and the Individual Defendants filed a motion to dismiss the TAC on January 29, 2007. (Doc. No. 117.) Also on January 29, 2007, Defendant San Diego City Employees' Retirement System ("SDCERS") filed a motion to dismiss the TAC. (Doc. No. 118.)

On January 29, 2007, Defendant Aguirre filed a joinder to Defendant City and the Individual Defendants' motion to dismiss. (Doc. No. 115.) Similarly, on January 29, 2007, Defendant City and the Individual Defendants filed a joinder to the motions to dismiss filed by Defendant Aguirre and Defendant SDCERS. (Doc. No. 117.) On January 31, 2007, Defendant SDCERS filed a joinder to the motions to dismiss filed by Defendant Aguirre and by Defendant City and the Individual Defendants. (Doc. No. 119.)

Plaintiffs filed a response in opposition to SDCERS' motion on February 20, 2007. (Doc. No. 124.) Plaintiffs filed a response in opposition to Aguirre's motion to dismiss on February 20, 2007. (Doc. No. 125.) Plaintiffs filed a response in opposition to the City and Individual Defendants' motion to dismiss on February 20, 2007. (Doc. No. 126.) Plaintiffs filed an amended response in opposition to KPMG's motion to dismiss on February 21, 2007. (Doc. No. 128.)

On February 26, 2007, Defendant Aguirre filed a reply in support of his motion to dismiss. (Doc. No. 129.) KPMG filed a reply in support of its motion to dismiss on February 26, 2007. (Doc. No. 130.) SDCERS filed a reply in support of its motion to dismiss on February 26, 2007. (Doc. No. 131.) Also on February 26, 2007, the City and Individual Defendants filed a reply in support of their motion to dismiss. (Doc. No. 132.)

Pursuant to its discretion under Civil Local Rule 7.1(d)(1), the Court has submitted the motions on the papers without oral argument. After reviewing the papers and the pertinent portions of the record, and as explained below, the Court **GRANTS**

in part and **DENIES** in part Defendant City of San Diego and the Individual Defendants' motion to dismiss; **GRANTS** in part and **DENIES** in part Defendant Aguirre's motion to dismiss; **GRANTS** Defendant SDCERS' motion to dismiss; and **GRANTS** Defendant KPMG's motion to dismiss. Further, as set forth below, the Court grants in part leave to amend. Plaintiffs shall file any amended complaint within 30 days of the date of this order.

## Background

Plaintiffs are active and retired San Diego police officers employed at various times by the City of San Diego. (TAC ¶ 2.) Plaintiffs allege systematic underfunding of the municipal pension system, which has rendered the system actuarially unsound. (Id. ¶ 15.) Plaintiffs' lawsuit arises out of the underfunding of the pension fund, and Plaintiffs allege that vested retirement and compensation benefits have been unlawfully eliminated or reduced. (Id. ¶¶ 17-31.) Further, Plaintiffs allege that Defendants conspired to cause the system to become actuarially unsound and subsequently conspired to cover up their fraud and the City's liability. (Id. ¶ 16.)

Plaintiffs allege that the City engaged in bad faith labor negotiations with Plaintiffs' recognized employee organization, the San Diego Police Officers' Association ("SDPOA"), as part of a scheme to take away vested retirement benefits and compensation. (Id. ¶¶ 26-37.) The TAC alleges that various Defendants manipulated pension funds for pet projects and personal gain, which led to the adoption of plans to defer contributions to the pension fund by the City. (Id. ¶ 42.) According to Plaintiffs, Defendant Aguirre conspired to facilitate a breakdown in the labor negotiations through acts of inducement and retaliation. (Id. ¶ 46.) Further, the TAC alleges that he has taken actions, and conspired to take actions, to reduce and take away Plaintiffs' pension benefits and compensation. (Id. ¶¶ 43-58.) Unlike the earlier suit filed by the SDPOA, this action also names KMPG as a Defendant, the accounting firm that the City hired to perform audits. (Id. ¶ 9.) Plaintiffs allege that KPMG participated in a conspiracy to conceal the City's wrongful conduct. (Id. ¶¶ 59-69.)

The TAC also alleges that the City, Aguirre, City Council Defendants, and City Official Defendants retaliated against Plaintiffs because they did not accept the City's last, best, final offer ("LBFO") in labor negotiations. (Id. ¶¶ 70-75.) Plaintiffs allege that the retaliation consisted of salary and benefit reductions and public criticism of the SDPOA. (Id.)

In the TAC, Plaintiffs bring federal civil rights claims as well as state law claims against Defendant Aguirre, Defendant City, SDCERS, and KPMG. The TAC also names individual employees and elected officers as Individual Defendants, including current and former members of the San Diego City Council,[1] former officials of the City of San Diego,[2] and former board members (or trustees) of SDCERS.[3] Finally, the TAC names Does 1 through 100 as Defendants. (Id. ¶ 10.) Plaintiffs attach several reports and opinions to support the allegations in the TAC.

## Discussion

### A. Legal Standard for Motion to Dismiss

"A complaint should not be dismissed under Rule 12(b)(6) 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Id. In ruling on a Rule 12(b)(6) motion, the facts in the complaint are taken as true and construed in the light most favorable to the

---

[1]The current City Council Defendants include Toni Atkins, Donna Frye, Ralph Inzunza, Jim Madaffer, Brian Maienschein, Scott Peters, Tony Young, and Michael Zucchet. (TAC ¶ 6.) Former City Council Defendants include Harry Mathis, Byron Wear, Christine Kehoe, George Stevens, Barbara Warden, Valerie Stallings, Judy McCarty, and Juan Vargas. (Id.)

[2]The City Official Defendants include Cathy Lexin, Mary Vattimo, Terri Webster, Ed Ryan, Bruce Herring, Lamont Ewell, Michael Uberuaga, and Jack McGrory, who served in executive positions, for example, as the City Manager or Treasurer. (TAC ¶ 7.)

[3] The SDCERS Board Member Defendants include Lexin, Vattimo, Webster, Ryan, and Herring, who are also named in their capacities as City Officials. (TAC ¶ 8.)

nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Conclusory allegations of law, however, will not defeat a motion to dismiss for failure to state a claim. See, e.g., Miranda v. Clark County, 279 F.3d 1102, 1106 (9th Cir. 2002).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). The court may, however, consider the contents of documents specifically referred to and incorporated into the complaint. Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994). Plaintiffs' complaint incorporates several reports and opinions to support its allegations of wrongdoing.

In addition, a court ruling on a motion to dismiss may consider facts that are subject to judicial notice. A district court may take judicial notice of matters of public record, but cannot use this rule to take judicial notice of a fact that is subject to "reasonable dispute" simply because it is contained within a pleading that has been filed as a public record. Lee v. City of Los Angeles, 250 F.3d 668, 689-90 (9th Cir. 2001); Biagro W. Sales Inc. v. Helna Chemical Co., 160 F. Supp. 2d 1136, 1140-41 (E.D. Cal. 2001) (matters of public record include "pleadings, orders and other papers filed with the court"). Similarly, a court may take judicial notice of the *existence* of a court opinion, but not "'the truth of the facts recited therein.'" Lee, 250 F.3d at 689 (quoting Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd., 181 F.3d 410, 426-27 (3d Cir. 1999)).

**B. Statute of Limitations as to § 1983 Claims**

Defendant City, Individual Defendants, SDCERS, and Aguirre argue that Plaintiffs' § 1983 claims,[4] other than the First Amendment retaliation claim, are barred

/ / / /

---

[4] Plaintiffs' § 1983 claims include: Claim One (First Amendment Retaliation); Claim Two (Contracts Clause Violations); Claim Three (Takings Clause Violations); Claim Four (14th Amendment Procedural Due Process Violations); and Claim Five (Conspiracy to Violate Civil Rights).

by the applicable two year statute of limitations as to claims premised on MP1. Plaintiffs oppose.

In § 1983 actions, the court applies the forum state's statute of limitations applicable to personal injury claims. Wilson v. Garcia, 471 U.S. 261, 275 (1985). In California, the statute of limitations for a personal injury claim is two years. See Cal. Code Civ. Proc. § 335.1. The accrual of a § 1983 claim is a question of federal law. Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir. 2001). Under federal law, a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." Id. (quoting TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999)). Plaintiffs filed this action on July 18, 2006. (See Doc. No. 1.) Therefore, under the applicable two year statute of limitations, any claims in the Third Amended Complaint must have accrued after July 18, 2004.

In their motion, Defendants point out that the Court already dismissed Plaintiffs' claims based on MP1 and did not allow leave to amend. Further, Defendants argue that Plaintiffs' amended allegations in the TAC do not salvage the time barred claims. Defendants argue that Plaintiffs' representative, the SDPOA, and SDPOA officials were involved in the implementation of MP1 and were aware of those proposals' effect upon SDCERS funding levels. Further, Defendants argue that SDCERS board members warned of the consequences of MP1, and they state that information regarding the funding crisis has been publicly available since at least 2002. Accordingly, Defendants argue that the statute of limitations began to run before July 18, 2004, making Plaintiffs' claims time barred. In response, Plaintiffs argue that Defendants fail to identify a specific underfunding date following MP1 to commence the limitations period. Further, they argue that the date they should have known of the injury is a question of fact, and they assert the continuing violation theory. Next, without discussion, they assert that the complaint alleges fraudulent concealment. Finally, Plaintiffs assert, again without explanation, that Defendants are estopped from asserting statute of limitations as a defense because of an earlier ruling in state court.

In the TAC, Plaintiffs include allegations purportedly tolling the statute of limitations as to MP1. (TAC ¶¶ 103-11.) According to Plaintiffs, SDCERS, along with the SDCERS board, the City, City Council Defendants, and City Official Defendants, concealed the detrimental effect of MP1 by adopting MP2, which put off the City's required balloon payment. (Id. ¶¶ 105-06.) Plaintiffs allege that they did not learn of the damage caused by MP1 until they became aware of the grand scheme of Defendants in early 2005. (Id. ¶ 107.) Further, Plaintiffs allege that rank and file police officers did not become aware of the dangers of MP1 until 2005, even if insiders knew of the consequences earlier. (Id. ¶ 106.)

Manager's Proposal 1, or MP1, was implemented in 1996 and contained provisions granting additional retirement benefits while reducing annual funding percentages. (See, e.g, id., Ex. K at 14; Ex. G at 9.) MP1 also contained a provision requiring the City to make a balloon payment if the ratio of fund assets to liabilities fell below 82.3 percent. (Id., Ex. K at 14.) When MP1 was implemented, the plan was more than 90% funded. (Id.) After a downturn in the market, however, the funding ratio dropped to 77.3% in Fiscal Year 2002. (Id.)

As indicated in the Court's order regarding motions to dismiss the SAC, although Plaintiffs state that they did not know that Defendants were scheming to underfund the pension plan until early 2005, (see id. ¶ 107), numerous exhibits Plaintiffs attach to the TAC demonstrate the contrary. Plaintiffs' representative, the SDPOA, was involved in the meet and confer process leading to the implementation of MP1. (Id., Ex. J at 10, 25.) In March 1996, the City Council held a closed session for labor negotiations with three of the City's four unions, including the SDPOA, regarding MP1. (Id. at 10.) Additionally, Garry Collins, president of the SDPOA, signed off on MP1 in June 1996. (See id. at 28.) Because Plaintiffs' union and the union officials representing Plaintiffs were informed and involved in the meet and confer process regarding MP1, and because union officials approved MP1, Plaintiffs knew of the implementation of MP1 at the time. Moreover, a pension board member

who voted against MP1 warned of the risk MP1 posed to the financial stability of SDCERS at a workshop regarding MP1 held on June 11, 1996. (Id. at 37-44.) Specifically, the board member raised concerns about transferring the costs to the next generation, whether there were any standards regarding funding levels available to fiduciaries, and whether the board had a fiduciary duty to assess the City's financial ability to pay for the new benefits. (Id. at 37-39.) Further, a public hearing held on June 21, 1996 regarding MP1 addressed whether the pension board needed to determine if the City would be able to meet its obligations under MP1. (Id. at 44.) Even assuming, as Plaintiffs allege, that the consequences of MP1 and MP2 came to light in 2002, that date is still several years prior to the relevant statutory limitations period.

Finally, Plaintiffs provide no discussion regarding their fraudulent concealment and estoppel arguments, and the Court already rejected the estoppel argument in its ruling on motions to dismiss the SAC. Accordingly, the Court rejects these arguments.

In sum, the Court concludes that MP1, implemented in 1996, is too remote in time and clearly outside the statute of limitations period. Plaintiffs knew or should have known of the alleged effect of MP1 prior to July 18, 2004. Accordingly, the Court **GRANTS** Defendants' motion on this ground, and any claims concerning the implementation of MP1 in 1996 are barred by the statute of limitations.

For the same reasons, and as indicated in the Court's previous order regarding motions to dismiss the SAC, the Court **GRANTS** Defendants' motion to dismiss as to the former members of the San Diego City Council and the former city manager whose terms expired by 2002. Any alleged acts by these former City Council members were based on the implementation of MP1 and their acts are barred by the statute of limitations. These Defendants include Mathis, Wear, Kehoe, Stevens, Warden, Stallings, McCarty, Vargas and former city manager McGrory.

The Court declines to allow Plaintiffs further attempts to amend regarding MP1. See, e.g., Royal Ins. Co. of Am. v. Sw. Marine, 194 F.3d 1009, 1016-17 & n.9 (9th Cir.

1999) (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

**C. Qualified Immunity as to First Amendment Claims**

In the order on motions to dismiss the SAC, the Court granted Defendants' motions to dismiss Plaintiffs' First Amendment retaliation claims on qualified immunity grounds, but granted Plaintiffs leave to amend.[5] With regard to the TAC, the Individual Defendants and Aguirre argue that they are entitled to qualified immunity as to Plaintiffs' § 1983 First Amendment retaliation claims. In support, Defendants argue that the Court should find, as it did with regard to the SAC, that Plaintiffs' amended allegations are insufficient to overcome qualified immunity. Plaintiffs oppose.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To establish qualified immunity, a court must first determine whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S 194, 201 (2001). If a violation of a constitutional right is established, the next question is "whether the right was clearly established." Id. That is, "whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Id. at 202. The United States Supreme Court has noted that a ruling on immunity should be made early in the proceedings. Id. at 200. When there are disputed issues of material fact, however, a jury must resolve the factual disputes. Ortega v. O'Connor,

[5] In their reply, the City and Individual Defendants argue that they are entitled to absolute legislative immunity and qualified immunity on Plaintiffs' remaining § 1983 claims. However, Defendants did not assert these arguments in their motion. Further, in the order on motions to dismiss the SAC, the Court denied these Defendants' motions to dismiss on absolute immunity grounds and denied their motion to dismiss the remaining § 1983 claims on qualified immunity grounds.

146 F.3d 1149, 1154 (9th Cir. 1998); Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993).

The First Amendment of the United States Constitution provides: "Congress shall make no law . . . abridging the freedom of speech." Regarding the right to association, "[o]ne of the foundations of our society is the right of individuals to combine with other persons in pursuit of a common goal by lawful means." Lyng v. Int'l Union, 485 U.S. 360, 366 (1988). The right to association extends to unions as well as the unions' members and organizers. Allen v. Medrano, 416 U.S. 802, 819 n.13 (1974). The right to association encompasses the right of public employees to associate and speak freely and petition openly. Smith v. Arkansas State Highway Employees, Local 1315, 441 U.S. 463, 464-65 (1979).

In a First Amendment retaliation claim, a plaintiff must show: "(1) he was subjected to an adverse employment action . . . , (2) he engaged in speech that was constitutionally protected because it touched on a matter of public concern and (3) the protected expression was a substantial motivating factor for the adverse action." Ulrich v. City and County of San Francisco, 308 F.3d 968, 976 (9th Cir. 2002) (citations omitted).

In the TAC, Plaintiffs allege that other labor organizations agreed to new memoranda of understanding with Defendant City, while the SDPOA went to impasse. (TAC ¶ 70.) According to Plaintiffs, Defendant City only imposed a salary reduction against the SDPOA's DROP employees. (Id.) Plaintiffs allege that Defendant City, City Council Defendants, City Official Defendants, and Aguirre singled out the SDPOA for not accepting the City's final offer. (Id. ¶ 71.) The TAC alleges that LBFO and DROP Plaintiffs were singled out and suffered retaliation because they engaged in protected speech by casting individual union votes against a collectively bargained contract. (Id. ¶ 72.) The TAC alleges that all Plaintiffs suffered retaliation in the form of pay reduction or benefit reduction through the unilateral imposition of the 2005 LBFO. Further, Plaintiffs assert that the 2005 LBFO constituted retaliation

against both the LBFO Plaintiffs and DROP Plaintiffs because it imposed wages, hours, and working conditions less favorable than those enjoyed previously. (Id. ¶ 73.) Plaintiffs also assert that Defendants retaliated against LBFO and DROP Plaintiffs by publicly criticizing the SDPOA. (Id. ¶ 74.) Finally, Plaintiffs allege that Defendants retaliated against Plaintiffs by taking at least $100 from the take home pay of each Plaintiff pursuant to the 2005 LBFO. (Id. ¶ 75.)

Looking at these allegations, Plaintiffs have not sufficiently remedied the deficiencies indicated by the Court in its order on the motions to dismiss the SAC. While Plaintiffs allege that the individual members engaged in protected speech by associating with the SDPOA and by casting union votes, the connection between the alleged retaliation and each individual Plaintiff's exercise of protected speech, as opposed to that of the SDPOA, is still too attenuated. Plaintiffs have not sufficiently alleged facts indicating that these individual Defendants singled out and punished individual members of the SDPOA for engaging in protected speech. Because the TAC does not sufficiently allege that any individual Defendants took actions that a reasonable official could have believed constituted a violation of each Plaintiff's First Amendment rights, the individual Defendants are entitled to qualified immunity against Plaintiffs' retaliation claim. Accordingly, after fully considering the issue, the Court **GRANTS** the Individual Defendants and Aguirre's motion to dismiss the First Amendment Retaliation claim on qualified immunity grounds. The Court will permit another attempt to amend, but Plaintiffs should remedy the deficiencies noted in this order. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

**D. California Tort Claims Act**

The City, Individual Defendants, and Aguirre argue that Plaintiffs' state law claims are barred because Plaintiffs failed to comply with the procedural requirements of the California Tort Claims Act ("CTCA"). See Cal. Gov't Code § 900 et seq. The

Court has already addressed these arguments in its recent order regarding Plaintiffs' compliance with the CTCA. (Doc. No. 120.) Accordingly, the Court **DENIES** Defendants' motion to dismiss the state law claims on this ground.

**E. Violation of Public Policy Under California Government Code § 3502**

The City and Individual Defendants, joined by Aguirre and SDCERS, move to dismiss Plaintiffs' eighth claim, in which they allege a public policy violation under the Meyers-Milias-Brown Act ("MMB Act"), Cal. Gov't Code § 3502. As they argued with regard to the SAC, Defendants contend that this statute does not create a private cause of action. Similarly, Aguirre, joined by the City, Individual Defendants, and SDCERS, also moves to dismiss this claim. He argues that, because the Court did not base its previous dismissal on insufficient pleading, but rather found that Plaintiffs had not established that the statute provides for a private right of action, and because the Court did not provide Plaintiffs with leave to amend, the Court should again dismiss this claim. Plaintiffs oppose, arguing that their claim is not for violation of the MMB Act, but for violation of the public policy embodied in the MMB Act.

Where, as here, a statute does not explicitly provide for a private action, the proponent must show that the legislature intended to create such a right. See, e.g., Agricultural Ins. Co. v. Super. Ct., 70 Cal. App. 4th 385, 399-400 (1999). Moreover, "when neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion." Crusader Ins. Co. v. Scottsdale Ins. Co., 54 Cal. App. 4th 121, 133 (1997).

The MMB Act provides that employees shall have the right to form, join, and participate in the activities of an employee organization. Looking at the Act, the legislature set forth a statutory and administrative scheme to apply to labor relations with state and local government employees. See, e.g., Glendale City Employees' Ass'n, Inc. v. City of Glendale, 15 Cal. 3d 328, 336 (1975) ("The Legislature designed the [MMB Act] for the purpose of resolving labor disputes."). Further, employees may

remedy violations of the MMB Act by either bringing an unfair labor practice charge with the Public Employment Relations Board, see Cal. Gov't Code §§ 3541.3(i) & 3541.5, or by bringing an action for writ of mandate in state court, depending on the type of public employee involved. See, e.g., Coachella Valley Mosquito and Vector Control Dist. v. Cal. Pub. Employment Relations Bd., 35 Cal. 4th 1072, 1077 (2005). Accordingly, as the Court found in its previous order, Plaintiffs have not met their "heavy burden" of establishing such a right of action based upon a public policy violation. See Crusader Ins. Co., 54 Cal. App. 4th at 133.

Moreover, the cases to which Plaintiffs direct the Court do not support a tort action based on violation of public policy set forth in the MMB Act. For example, in Castillo v. Friedman, the court examined a statute setting forth the duty of care a landlord owes to tenants in conducting an eviction. 197 Cal. App. 3d Supp. 6, 14-16 (Cal. App. Dep't Super. Ct. 1987). In finding that a tenant could bring a tort action based on violation of the statute, the court determined that this statute belonged to a category of statutes creating a duty or standard of conduct, "the breach of which, where it causes injury, gives rise to liability in tort." Id. at 14. Examining the legislative intent, the court held, "[s]uch a tenant is a member of the class for whose benefit the ordinance was enacted, and implication of a private remedy is clearly consistent with the purposes of the ordinance." Id. at 16. The California Court of Appeal has indicated that the Restatement (Second) of Torts provides the appropriate rule in determining whether a statute setting forth a duty of care gives rise to a civil remedy for a violation:

> When a legislative provision protects a class of persons by proscribing or requiring certain conduct but does not provide a civil remedy for the violation, the court may, if it determines that the remedy is appropriate in furtherance of the purpose of the legislation and needed to assure the effectiveness of the provision, accord to an injured member of the class a right of action, using a suitable existing tort action or a new cause of action analogous to an existing tort action.

Middlesex Ins. Co. v. Mann, 124 Cal. App. 3d 558, 570 (1981) (quoting Restatement (Second) of Torts § 874A).

/ / / /

The MMB Act is not similar to the statute setting forth a standard of care in Castillo, and it does not meet the test set forth in Mann. Rather, as discussed above, employees already have at their disposal means for remedying violations of the MMB Act. Creating a tort remedy for violations of the act is not appropriate and is not required to fulfill the policy behind the statute. Finally, Plaintiffs cite to several unpublished district court opinions in which the courts simply mention, without discussion, that the plaintiffs were bringing claims for violating public policy. These cases do not lend support to Plaintiffs' position.

In sum, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' Eighth claim for relief. Because the dismissal is not based upon inadequate pleading, the Court declines to allow leave to amend, as amendment would be futile. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

**F. Brown Act, California Government Code § 54950 et seq.**

In their Ninth claim, Plaintiffs allege that Aguirre, the City, Council Members, City Officials, and Doe Defendants violated the Brown Act, Cal. Gov't Code § 54950 et seq., when they held closed session meetings. (TAC ¶¶ 32-41, 165-70.) The City, Individual Defendants, and Aguirre move to dismiss this claim, and Plaintiffs oppose.

"The purpose of the Brown Act is to facilitate public participation in local government decisions and to curb misuse of democratic process by secret legislation by public bodies." Boyle v. City of Redondo Beach, 70 Cal. App. 4th 1109, 1116 (1999). The Brown Act requires that local legislative bodies hold "open meetings." Id. California Government Code § 54962 provides, "[e]xcept as expressly authorized by this chapter . . . no closed session may be held by any legislative body of any local agency." Cal. Gov't Code § 54962. The Brown Act is not limited to gatherings at which action is taken by the legislative body, but "deliberative gatherings" are also included. 216 Sutter Bay Assocs. v. County of Sutter, 58 Cal. App. 4th 860, 876

(1997) (citations omitted). "Deliberation in this context connotes not only collective decisionmaking, but also 'the collective acquisition and exchange of facts preliminary to the ultimate decision.'" Id. at 877 (quoting Sacramento Newspaper Guild v. Sacramento County Bd. of Supervisors, 263 Cal. App. 2d 41, 47-48 (1968)). "To prevent evasion of the Brown Act, a series of private meetings (known as serial meetings) by which a majority of the members of a legislative body commit themselves to a decision concerning public business or engage in collective deliberation on public business would violate the open meeting requirement." Id.

Nevertheless, exceptions exist to the prohibition against closed sessions articulated in § 54962, so long as the closed session items are described in accordance with § 54954.5. Section 54957.6, also known as the "labor negotiations exception," provides that the legislative body of a local agency "may hold closed sessions with the local agency's designated representatives regarding the salaries, salary schedules, or compensation paid in the form of fringe benefits of its represented . . . employees, and, for represented employees, any other matter within the statutorily provided scope of representation." Id. § 54957.6(a). Before these closed sessions, however, "the legislative body of the local agency shall hold an open and public session in which it identifies its designated representatives." Id. In addition, a closed session may include discussion regarding any agency's available funds and funding priorities. Id. Another exception provides that a closed session may be held to consider "the purchase or sale of particular, specific pension fund investments." Id. § 54956.81. Further, a closed session may be held concerning a conference with legal counsel regarding existing and anticipated litigation. Id. § 54956.9.

In the TAC, Plaintiffs allege that closed session meetings leading to the implementation of the 2005 LBFO violated the Brown Act. (TAC ¶ 38-41, 53-55.) Plaintiffs allege that Aguirre and the City Council Defendants met in closed session on or after December 7, 2004. (Id. ¶ 53.) Further, Plaintiffs allege that Aguirre met with the City Council Defendants and City Official Defendants. (Id. ¶ 54.) Plaintiffs allege

that these closed session meetings were convened illegally and that one of the City Attorney's reports identifies the illegal closed meetings. (Id. ¶ 55.) Noting the labor negotiation exception in § 54957.6(a), Plaintiffs allege that this exception does not apply to the meetings among Defendants including Defendant Aguirre because he was never properly designated as a labor negotiator on behalf of the City for collective bargaining. (Id. ¶ 38.) Viewing the allegations in the light most favorable to Plaintiffs, they have alleged a claim for violation of the Brown Act by the City Council Defendants.

Nevertheless, the Brown Act does not regulate the conduct of persons other than members of the legislative body of local agencies. See Wolfe v. City of Fremont, 144 Cal. App. 4th 533, 551-52 (2006). In Wolfe, the California Court of Appeal examined the history and text of the Brown Act and explained that the statute focused on the conduct of legislators. Id. at 551. Accordingly, the court affirmed the dismissal of claims against the city manager and police chief under the Brown Act. Additionally, the court explained, "in the absence of statutory authority, we reject the argument that we should recognize a civil cause of action for aiding and abetting a Brown Act violation. Given the purpose of the act, there is simply no need for such a claim." Id. at 552. Therefore, the Brown Act claims against the City Officials and Aguirre fail, and the Court **DISMISSES** the claims against these Defendants without leave to amend. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider futility of amendment). Moreover, because they left the City Council prior to the 2005 negotiations, the Court **DISMISSES** the Brown Act claims against Defendants Mathis, Wear, Kehoe, Stevens, Warden, Stallings, McCarty, and Vargas without leave to amend. See, e.g., id. The Court **DENIES** Defendants' motion to dismiss as to the remaining City Council Defendants.

## G. Conversion of Trust and Conversion

In Plaintiffs' Twelfth claim, they allege conversion of trust against the City, Council Members, SDCERS, SDCERS Board Members, and Doe Defendants. The

City, Individual Defendants, and SDCERS all seek to dismiss these claims. In Plaintiffs' Thirteenth claim, they allege conversion against the City, Aguirre, Council Members, Officials, SDCERS, SDCERS board members, and Doe Defendants. The City, Individual Defendants, Aguirre, and SDCERS move to dismiss the conversion claim.

"Conversion is the wrongful exercise of dominion over the property of another." Farmers Ins. Exchange v. Zerin, 53 Cal. App. 4th 445, 451 (1997). Conversion contains three elements: (1) plaintiff's ownership or right of possession of the property at the time of conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. See, e.g., AmerUS Life Ins. Co. v. Bank of Am, N.A., 143 Cal. App. 4th 631, 642 n.4 (2006) (quoting Oakdale Village Group v. Fong, 43 Cal. App. 4th 539, 543-44 (1996)). "It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use." Id. (quoting Fong, 43 Cal. App. 4th at 544). "Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion." Fischer v. Machado, 50 Cal. App. 4th 1069, 1072 (1996). Money can be subject to a claim of conversion if it is specifically identified. Id. at 452. If money is not specifically identified, then the proper action is in contract or for debt. Baxter v. King, 81 Cal. App. 192, 194 (1927). A party need not demonstrate absolute ownership over the property, it need only show that it is "entitled to immediate possession at the time of conversion." Farmers Ins. Exchange, 53 Cal. App. 4th at 452 (citation omitted). A mere contractual right to payment is not enough. Id.

Additionally, a cause of action for conversion of trust requires a fiduciary relationship. See Strasburg v. Odyssey Group, Inc., 51 Cal. App. 4th 906, 916-17 (1996) (conversion of trust funds); Bennett v. Hibernia, 47 Cal.2d 540, 561 (1956) (conversion of trust property). A fiduciary relationship exists between a trustee who

administers a pension plan and its beneficiaries. Masters v. San Bernardino County Employees Ret. Assn., 32 Cal. App. 4th at 30, 43-45 (1995).

As they did with regard to the SAC, the City and Individual Defendants argue that the Court should dismiss these claims because most Plaintiffs are active officers and are not currently entitled to any pension benefits or retiree medical benefits. Aguirre, joined by the City and Individual Defendants, contends that Plaintiffs cannot plead a cause of action for conversion. Moreover, regarding the DROP Plaintiffs, the City and Individual Defendants contend that these Plaintiffs have received all of the benefits due to them. Thus, these Defendants argue that, at most, Plaintiffs have a contractual right to payment in the future, which is insufficient to state a claim for conversion or conversion of trust.

In the TAC, Plaintiffs allege:

> Defendant City, City Council Defendants, City Official Defendants and Defendant Aguirre retaliated against each and every individually [sic] Plaintiff by illegally taking at least $100 from the take-home pay of each and every Plaintiff pursuant to the illegal 2005 LBFO. Each and every time the City issued Plaintiffs a paycheck subsequent to the implementation of the terms of the 2005 LBFO, the City unlawfully retaliated against each Plaintiff by depriving them of their rightful wages, benefits, and employment rights in existence prior to the 2005 LBFO.

(TAC ¶ 75.) Viewing the allegations in the TAC in the light most favorable to Plaintiffs, they have stated a claim for conversion, as they allege that Defendant City, City Council Defendants, City Official Defendants, and Defendant Aguirre converted money from Plaintiffs' paychecks for their own use.

Additionally, with regard to the conversion of trust claim, the TAC alleges that the City is a fiduciary to Plaintiffs because it has a Constitutional responsibility to fund the pension system in an actuarially sound manner for the sole benefit of Plaintiffs. (See id. ¶ 188.) Viewing the allegations in the light most favorable to Plaintiffs, they have stated a claim for conversion of trust against the City and City Council Defendants.

/ / / /

SDCERS, joined by the Individual Defendants, argues that Plaintiffs have failed to allege that SDCERS has improperly exercised dominion over property to which Plaintiffs had an immediate right of possession. In the conversion of trust claim, Plaintiffs allege that Defendants breached their fiduciary duty by allowing Defendant City to divert funds for unlawful uses. (TAC ¶ 185.) Further, Plaintiffs allege that SDCERS refused to enforce the City's obligation to fund the pension system. (Id. ¶ 186.) With regard to the conversion claim, Plaintiffs' allegations focus on the acts of the City, City Council Defendants, City Official Defendants, and Aguirre. (Id. ¶¶ 75, 192.) Viewing the allegations in the TAC in the light most favorable to Plaintiffs, they have failed to allege that SDCERS or SDCERS Board Defendants assumed control or ownership over property to which Plaintiffs had an immediate right to possession or that it applied Plaintiffs' property to its own use. See AmerUS Life Ins. Co., 143 Cal. App. 4th at 642 n.4 (quoting Fong, 43 Cal. App. 4th at 544). In ruling on motions to dismiss the SAC, the Court ruled that, to the extent Plaintiffs attempted to construe their conversion claims against SDCERS as being based on knowing receipt of stolen property, those claims failed. In the TAC, in the conversion of trust claim, Plaintiffs allege that SDCERS knew or should have known that it received stolen funds and that SDCERS looked the other way when the City gave it stolen funds. (TAC ¶ 187.) Taking these allegations as true for purposes of a motion to dismiss, Plaintiffs still do not allege that SDCERS or SDCERS Board Members converted any money for their own use or deprived Plaintiffs of that money. Indeed, Plaintiffs do not allege that SDCERS used any contributions from the City for anything other than for the benefit of SDCERS' members. Accordingly, Plaintiffs' conversion claims against SDCERS and SDCERS Board Defendants fail.

In sum, the Court **DENIES** Aguirre's motion to dismiss the conversion claim. The Court **GRANTS** SDCERS' and SDCERS Board Members' motions to dismiss the conversion and conversion of trust claims with prejudice. Further, the Court **DENIES** the City and remaining Individual Defendants' motions to dismiss the conversion and

conversion of trust claims. Finally, the Court declines to allow further attempts to amend. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

**H. Fraud**

In their Fourteenth claim, Plaintiffs bring an action for fraud against the City, Council Members, City Officials, and Doe Defendants. The City and Individual Defendants, joined by Aguirre, move to dismiss this claim, arguing that Plaintiffs have failed to plead fraud adequately. Plaintiffs oppose.

Under California law, a plaintiff must plead: "(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damages." Okun v. Morton, 203 Cal. App. 3d 805, 828 (1988). A defendant must fully understand the nature of the charge. Stansfield v. Starkey, 220 Cal. App. 3d 59, 73 (1990). Plaintiff must allege "how, when, where, to whom, and by what means the representations were tendered." Id. (citation omitted). Additionally, under Rule 9 of the Federal Rules of Civil Procedure, a claim of fraud "shall be stated with particularity." Fed. R. Civ. P. 9(b).

Looking at the TAC, Plaintiffs have failed to remedy the deficiencies noted by the Court in its order on motions to dismiss the SAC. Specifically, Plaintiffs fail to allege fraud with particularity. For example, Plaintiffs allege: "During labor negotiations that lead [sic] to the adoption of the 2003-2005 MOU, the City's labor negotiator represented to LBFO-Plaintiffs' employee representatives from the SDPOA that the City agreed to pick-up 10% of the contributions those Plaintiffs were required to make to SDCERS in lieu of paying those Plaintiffs a wage increase." (TAC ¶ 196.) Plaintiffs also allege: "In reliance upon these representations, the SDPOA presented LBFO-Plaintiffs with the City's pick-up offer instead of a salary increase, which was agreed upon. . . . Defendants knew these representations to be false and untrue when

they were made to the SDPOA's leadership by the City's labor negotiator." (Id. ¶ 197.) The TAC fails, however, to state with particularity when these representations were allegedly made and the content of some of the representations. Further, Plaintiffs fail to allege sufficient facts to support their position that Defendants knew these representations were false. Indeed, the allegations in the TAC are nearly identical to those the Court found insufficient in the SAC.

In sum, the allegations to which Plaintiffs direct the Court fail to specify sufficiently "how, when, where, to whom, and by what means the representations were tendered." See Stansfield, 220 Cal. App. 3d at 73. Accordingly, the Court **GRANTS** Defendants' motion to dismiss as to fraud, but will grant 30 days leave to amend. Plaintiffs must cure the deficiencies in any amended complaint. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

**I. Breach of Contract**

In their Fifteenth claim, Plaintiffs bring a breach of contract action against Defendant City and SDCERS. In its order on motions to dismiss the SAC, the Court denied the City's motion to dismiss the breach of contract claim, but granted SDCERS' motion to dismiss with leave to amend. Defendant SDCERS, joined in part by the City and Individual Defendants, moves to dismiss this claim, again arguing that Plaintiffs have failed to allege specific contracts between Plaintiffs and SDCERS that SDCERS has breached. Plaintiffs oppose.

In a breach of contract claim, a plaintiff must allege (1) a contract, (2) plaintiff's performance, (3) defendant's breach, and (4) damages. McDonald v. John P. Scripps Newspaper, 210 Cal. App. 3d 100, 104 (1989). A third-party beneficiary, who is not a signatory to a contract, may sue for breach of contract if the contract was made for his or her direct benefit. Tyler v. Cuomo, 236 F.3d 1124, 1135 (9th Cir. 2000).

/ / / /

As they did in the SAC, Plaintiffs allege that SDCERS breached several agreements. In allegations identical to those in the SAC, Plaintiffs allege that the

> aforementioned conduct of the City and SDCERS constitutes a breach of multi-party agreements with Plaintiffs and contracts for which they are third-party beneficiaries, including but not limited to successive MOUs, the City Charter and Municipal Code, the retirement system trust documents, agreements between the City and SDCERS delaying full funding of the City's obligations to the retirement system, and Section 218 agreements.

(TAC ¶ 202.) Looking at the alleged sources of contract rights in the TAC, Plaintiffs have not alleged a contract between Plaintiffs and SDCERS that SDCERS has breached. Similarly, Plaintiffs do not allege a contract between SDCERS and another party under which Plaintiffs may bring suit as third party beneficiaries.

**1. Successive MOUs**

Concerning the memoranda of understanding, Plaintiffs do not allege that SDCERS was a party to any of these agreements. For example, with regard to the latest MOU, Plaintiffs allege that "[t]he last memorandum of understanding in effect between SDPOA and the City was from July 1, 2003 through June 30, 2005 ("MOU"), and contained an internal grievance procedure that has at all relevant times been inadequate and futile." (Id. ¶ 22.) Thus, because Plaintiffs allege that the MOUs were between the SDPOA and the City, they cannot form a basis for a breach of contract action against SDCERS. See, e.g., Gold v. Gibbons, 178 Cal. App. 2d 517, 519 (1960) ("Breach of contract cannot be made the basis of an action for damages against defendants who did not execute it and who did nothing to assume its obligations.").

**2. The City Charter and Municipal Code**

Plaintiffs provide few allegations regarding how these pieces of legislation create enforceable contract rights between each Plaintiff and SDCERS. In the TAC, Plaintiffs allege:

> Defendant Aguirre admits, "SDCERS operates as a trust under California law." Defendant Aguirre also admits, "there is no 'trust' document beyond the Municipal Code sections that discuss the SDCERS fund." SDCERS entered into a contract with each Plaintiff upon commencement of employment by each Plaintiff. Under that trust document contract, SDCERS is required to perform by managing and administering the fund

> for the sole and exclusive benefit of Plaintiffs and other SDCERS members and beneficiaries. Plaintiffs are required to perform by carrying out their employment responsibilities with the City and contributing funds to the system. By nature of the trust relationship, SDCERS is Plaintiffs' fiduciary.

(TAC ¶ 50.) Nowhere in the TAC, however, do Plaintiffs identify provisions of the City Charter and Municipal Code that SDCERS has allegedly breached. Thus, as indicated in its order on motions to dismiss the SAC, Plaintiffs have failed to allege sufficiently a contract claim based on these legislative acts.

As a general rule, a statutory scheme does not create contractual rights. See, e.g., Walsh v. Bd. of Admin., 4 Cal. App. 4th 682, 697 (1992) ("Thus, it is presumed that a statutory scheme is not intended to create private contractual or vested rights and a person who asserts the creation of a contract with the state has the burden of overcoming that presumption."). Under California law, however, the courts have indicated "a strong preference for construing governmental pension laws as creating contractual rights for the payment of benefits." Id. at 698. In Board of Administration v. Wilson, the California Court of Appeal examined whether legislative changes to a statutorily created pension system for state workers amounted to an unconstitutional impairment of contract. Bd. of Admin. v. Wilson, 52 Cal. App. 4th 1109 (1997). The retirement system board brought a mandamus action against the governor challenging the legislative changes, arguing that the enactments violated the state and federal prohibitions on impairment of contract. Id. at 1117-18. The court concluded that state employees had a contractual right to an actuarially sound retirement system and determined that the alterations amounted to unconstitutional impairments of contract. Id. at 1131-44. The court did not examine whether a legislatively created pension system could form the basis for a breach of contract action, however, and it did not examine whether pension statutes could create enforceable contract rights between the pension system itself and employees. Accordingly, the cases to which Plaintiffs direct the Court do not support a breach of contract claim against SDCERS. Further, to the extent Plaintiffs seek to hold SDCERS liable for breach of contract solely because it

is the only entity capable of providing an actuarially sounds pension system, they have not explained how this comports with the requirement under California law that "[b]reach of contract cannot be made the basis of an action for damages against defendants who did not execute it and who did nothing to assume its obligations." Gold v. Gibbons, 178 Cal. App. 2d 517, 519 (1960).

**3. Retirement System Trust Documents**

Next, the TAC references retirement system trust documents as a source of agreements allegedly breached by SDCERS. (See TAC ¶ 202.) As in the SAC, however, Plaintiffs do not specify particular provisions of trust documents, and in fact, they do not identify which trust documents SDCERS has allegedly breached. Accordingly, Plaintiffs' vague reference to retirement system trust documents are insufficient to state a breach of contract claim against SDCERS.

**4. Agreements between the City and SDCERS Delaying Full Funding of the City's Obligations**

Plaintiffs also allege that SDCERS has breached "agreements between the City and SDCERS delaying full funding of the City's obligations." (Id.) Plaintiffs have not explained to which agreements this allegation refers. Accordingly, this allegation fails to state a claim for breach of contract against SDCERS.

**5. Section 218 Agreements**

Plaintiffs also list Section 218 agreements as a source of contract rights. (Id.) Plaintiffs allege that, in 1981, the municipal workers of the City voted to replace Social Security benefits in return for the City providing medical benefits to retirees. (Id. ¶ 80.) According to Plaintiffs, the City, state, and federal government entered into an agreement, pursuant to Section 218 of the Social Security Act, 42 U.S.C. § 418, to replace Social Security benefits in return for the City providing Retiree Medical Benefits for which contributions would be administered by SDCERS. (Id.) Plaintiffs attach to the TAC a copy of the Section 218 agreement, which is signed by the City and the State of California. (Id., Ex. S.) Because neither Plaintiffs nor SDCERS are parties

to the Section 218 agreement, however, Plaintiffs cannot state a breach of contract claim against SDCERS based on this agreement. See Gold, 178 Cal. App. 2d at 519 ("Breach of contract cannot be made the basis of an action for damages against defendants who did not execute it and who did nothing to assume its obligations.").

**6. Plaintiffs' Claims as Third Party Beneficiaries**

Finally, Plaintiffs allege that they are third party beneficiaries to agreements between the City and SDCERS. (See, e.g., TAC ¶ 202.) As noted above, however, Plaintiffs have not directed the Court to any agreements to which SDCERS is a party. Accordingly, Plaintiffs cannot state a claim for breach of contract against SDCERS as third party beneficiaries. Further, Plaintiffs have not provided any legal support for their argument that the California Constitution creates a contract between the City and SDCERS enforceable by Plaintiffs. Finally, as noted above, to the extent Plaintiffs seek to hold SDCERS liable for breach of contract because it is the only entity capable of providing an actuarially sounds pension system, they have not explained how this comports with the requirement under California law that "[b]reach of contract cannot be made the basis of an action for damages against defendants who did not execute it and who did nothing to assume its obligations." Gold, 178 Cal. App. 2d at 519.

In sum, the Court **GRANTS** SDCERS motion to dismiss the breach of contract claim against it. Further, because Plaintiffs have had several opportunities to amend this claim, but still rely on the same alleged sources for the contractual rights as stated in the SAC, the Court declines to allow leave to amend. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

**J. Interference with Contractual Relations**

In their Sixteenth claim, Plaintiffs bring an action for interference with contractual relations against the City, Aguirre, Council members, City Officials,

/ / / /

SDCERS, SDCERS Board Members, KPMG, and the Doe Defendants. All Defendants move to dismiss this claim. Plaintiffs oppose.

To state a claim for interference with contractual relations, a plaintiff must show "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damages." Sole Energy, Co. v. Petrominerals Corp., 128 Cal. App. 4th 212, 237-38 (2005). In an action for inducing a breach of contract, an action may not be brought against a party to the contract. Dryden v. Tri-Valley Growers, 65 Cal. App. 3d 990, 999 (1977). If such an action is brought, it is in essence a breach of contract claim. Id.

Defendant City, Individual Defendants, SDCERS, and KPMG contend that the TAC fails to identify the contracts with which they allegedly interfered and fails to specify which Defendants are the contracting parties. Further, Defendants highlight that Plaintiffs' allegations in the TAC are virtually identical to those held insufficient in the SAC. Plaintiffs oppose.

Examining the TAC, other than adding a claim against Defendant Aguirre, the allegations are the same as those in the SAC. (Compare TAC ¶ 205 with SAC ¶ 155.) In the TAC, Plaintiffs allege:

> Defendant Aguirre, Defendant City, City Council Defendants, City Official Defendants, SDCERS, SDCERS Board Defendants, KPMG and Does were aware Plaintiffs are parties to or beneficiaries of the contracts and multi-party agreements alleged above, and Defendants' aforementioned conduct intentionally and purposefully interfered with these contracts, third-party beneficiary rights and multi-party agreements.

(TAC ¶ 205.) With regard to Aguirre, Plaintiffs additionally allege that he interfered with the SDPOA's membership agreements, the 2003-2005 MOU between the SDPOA and the City, and the trust agreement with SDCERS. (Id. ¶ 48.) Further, Plaintiffs allege that he impaired the City's contractual obligations to Plaintiffs. (Id. ¶ 35.)

////

As before, other than in the allegations relating to Aguirre, Plaintiffs do not specify the particular contracts with which Defendants allegedly interfered. Further, Plaintiffs do not correlate allegedly wrongful conduct on the part of particular Defendants to interference with particular contracts. Moreover, Plaintiffs do not allege that any particular Defendant proximately caused any particular contractual disruption. Instead, Plaintiffs improperly group all Defendants together in their interference with contractual relations claim.[6] (Id. ¶ 205.) Accordingly, Plaintiffs have failed to plead sufficiently the elements of a claim for interference with contractual relations against Defendants. Moreover, as noted in the Court's order regarding motions to dismiss the SAC, Plaintiffs' allegations do not provide a short and plain statement of the claim sufficient to provide each Defendant with fair notice of Plaintiffs' claim and the grounds on which the claim is based. See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993). Accordingly, the Court **DISMISSES** Plaintiffs' Interference with Contractual Relations claim as to all Defendants. Additionally, because the Court has previously provided Plaintiffs with an opportunity to amend this claim, and because Plaintiffs failed to make substantive changes to the claim in the TAC, the Court declines to allow leave to amend. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

/ / / /

/ / / /

[6] As previously noted in the order on motions to dismiss the SAC, undifferentiated pleading against multiple defendants is improper. See, e.g., In re Sagent Tech., Inc., 278 F. Supp. 2d 1079, 1094 (N.D. Cal. 2003) ("[T]he complaint fails to state a claim because plaintiffs do not indicate which individual defendant or defendants were responsible for which alleged wrongful act. Plaintiffs plead no facts showing how defendants that joined the board in late 2000 or in 2001 could be responsible for events that occurred in 1999, or how defendants that left Sagent in 2000 could have any connection with actions taken, or not taken, in 2001."); Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (lumping together multiple defendants in one broad allegation fails to satisfy notice requirement of Fed. R. Civ. P. 8(a)(2)).

**K. First Amendment Retaliation as to Aguirre**

Aguirre, joined by the City and Individual Defendants, argues that the TAC does not state a First Amendment Retaliation claim against him. As discussed above, however, the Court dismisses the First Amendment claim against Aguirre on qualified immunity grounds.

**L. Conspiracy**

To state a claim for conspiracy under § 1983, a plaintiff must allege an agreement or meeting of the minds to violate constitutional rights. See, e.g., Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999). The defendants must have intended to accomplish, by some concerted action, an unlawful objective for the purpose of harming another, which results in damage. Id. To be liable, each participant need not know the exact details of the plan, but must at least share in the common objective of the plan. Id. (citing United Steelworkers of America v. Phelps Dodge Corp., 865 F.2d 1539, 1540 (9th Cir. 1989)). To state a claim for a conspiracy to violate one's constitutional rights under § 1983, a "plaintiff must state specific facts to support the existence of the claimed conspiracy." Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989). A plaintiff meets this heightened pleading standard if she alleges "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights . . . ." Harris v. Roderick, 126 F.3d 1189, 1196 (9th Cir. 1997). The Ninth Circuit has recently reiterated that a plaintiff must plead "specific facts" to support a conspiracy allegation. Olsen v. Idaho Bd. of Medicine, 363 F.3d 916, 929 (9th Cir. 2004); see also Jones v. Tozzi, 2006 WL 2472752, *13 n.6 (E.D. Cal. Aug. 24, 2006) ("The heightened pleading standard as applied to conspiracy cases does appear to still be good law in the Ninth Circuit.").

**1. Conspiracy as to Aguirre**

Aguirre, joined by the City and Individual Defendants, argues that the TAC demonstrates that, as a matter of law, there is no single conspiracy involving Aguirre

and the other Defendants. Further, Aguirre argues that Plaintiffs cannot plead a cover up conspiracy involving Aguirre and other Defendants. Accordingly, Aguirre moves to dismiss Plaintiffs' claim against him for conspiracy to violate civil rights under 42 U.S.C. § 1983. Plaintiffs oppose.

As previously indicated in the order on motions to dismiss the SAC, the documents Plaintiffs attach to the TAC are inconsistent with conspiracy allegations as to Aguirre. Moreover, allegations in certain parts of the TAC are inconsistent with allegations in other portions of the pleading. As in the SAC, Plaintiffs again allege in the TAC: "As City Attorney, Defendant Aguirre admits that Defendant City, City Council Defendants, City Official Defendants, SDCERS Board Defendants, and SDCERS conspired to commit and indeed committed numerous breaches of fiduciary duties, as set forth in various writings posted by Defendant Aguirre[.]" (TAC ¶ 43.) Plaintiffs incorporate by reference and attach to the TAC several writings by the City Attorney relating to the pension crisis. (Id. Exs. F-J, & L.) These documents indicate that Aguirre has brought to light the facts and circumstances leading up to the pension crisis. Also in the documents, Aguirre connects individuals to alleged misconduct giving rise to the pension crisis. In line with these documents, Plaintiffs allege:

> Defendant Aguirre has acknowledged that one of the primary factors that caused the retirement system financial crisis is the conduct of the individual Defendants who used retirement system funds . . . to fulfill other financial obligations. Defendant Aguirre also acknowledges that the UAAL has been aggravated by those individual Defendants' use of the "waterfall provision" . . . to improperly divert funds for purposes unrelated to the retirement system.

(Id. ¶ 44.) Further, Plaintiffs allege: "The City Attorney's reports, as referenced, admit that there was a conspiracy among various individual Defendants who have committed numerous breaches of fiduciary duty, fraud, and concealment." (Id. ¶ 45.)

In these portions of the TAC, Plaintiffs rely on, and make allegations consistent with, the attached documents prepared by the City Attorney. Nevertheless, even though they rely on his reports of investigations into the pension crisis as the factual basis for many of their allegations, Plaintiffs allege that Aguirre conspired with these

same Defendants. (Id. ¶¶ 45, 46, 51-57.) Further, Plaintiffs allege that the conspiracy, which began as a conspiracy to cause the pension system to be actuarially unsound, eventually morphed into a scheme to cover up the City's financial condition. (Id. ¶ 16.) Plaintiffs allege that "KPMG and the other defendants have conspired to willfully conceal the City's wrongful, fraudulent, and illegal conduct." (Id. ¶ 69.) Contrary to a scheme involving both Aguirre and KPMG, however, Plaintiffs' allegations include quotes from Aguirre in which he criticizes KPMG, stating that "KPMG has absolutely no further excuse to allow them further delay," and that KPMG "breached its fundamental duty to the city of San Diego." (Id. ¶ 62.)

In sum, Plaintiffs' conspiracy allegations as to Aguirre are inconsistent with the documents they attach to the complaint and upon which they rely for many of their conspiracy allegations. Further, their allegations regarding Aguirre taking part in a conspiracy with KPMG to conceal the City's financial condition are inconsistent with other allegations included in the TAC. Accordingly, the Court concludes that Plaintiffs have failed to state a claim for conspiracy to violate civil rights against Aguirre. Thus, the Court **GRANTS** Defendant Aguirre's motion to dismiss on this ground, but will allow one more opportunity to amend this claim to cure the deficiencies of the TAC. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

**2. Conspiracy as to SDCERS**

SDCERS, joined by the City and Individual Defendants, argues that the SAC fails to plead facts sufficient to state a conspiracy claim against SDCERS. Plaintiffs oppose.

Looking at the SAC, Plaintiffs have again failed to meet the heightened pleading standard regarding conspiracy against SDCERS. In the TAC, Plaintiffs allege: "Unless otherwise indicated, each Defendant conspired, committed, ordered, directed, supervised, allowed, planned, ratified, concealed, organized, acted in concert with, or

otherwise participated in one or more of the unlawful acts alleged in this complaint." (TAC ¶ 93.) Further, the TAC alleges:

> Defendants entered into agreements and conspired to eliminate and/or reduce retirement benefits, including reducing the various vested retirement benefits owed to Plaintiffs. Such conspiracy took place, and continues in effect for the purpose of seeking to reduce and/or eliminate retirement benefits owed to Plaintiffs, to use retirement system monies to fund other obligations or for self-dealing or personal gain, to avoid making legally mandated funding contributions, to facilitate the City's economic gain and the political gain of one or more of the individual Defendants, to cover up the breach of fiduciary duty of SDCERS Board Defendants who participated in the City's under-funding schemes and to conceal this initial conspiracy by refusing to release complete and accurate financial audits for the years beginning with 2003.

(Id. ¶ 94.) As in the SAC, Plaintiffs do not clarify with which Defendants SDCERS has allegedly conspired. Further, Plaintiffs have not alleged when SDCERS entered into any conspiratorial agreements, how it entered into the conspiracy, and how it participated in the conspiracy. The vague and conclusive allegations in the TAC as to SDCERS are insufficient to state a conspiracy claim. Accordingly, the Court **GRANTS** SDCERS' motion to dismiss on this ground, but the Court will allow leave to amend to cure the deficiencies in the TAC. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

**M. Section 1983 Claims as to KPMG**

To maintain a § 1983 civil rights action, a plaintiff must allege: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." Balistreri, 901 F.2d at 699. Additionally, where the defendant is a private entity, a plaintiff must allege "that there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001) (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 349 (1974)). The Ninth Circuit has recognized several approaches to conducting the state action determination.

George v. Pacific-CSC Work Furlough, 91 F.3d 1227, 1230 (9th Cir. 1996); see also Lee v. Katz, 276 F.3d 550, 554 (9th Cir. 2002) (in light of Brentwood Academy, noting that satisfaction of one approach may be sufficient to find state action, absent countervailing considerations). First, a private entity's action may constitute state action where the action is traditionally and exclusively performed by the State. Id. Second, under the nexus approach, state action may be found where the state is extremely connected to the challenged action. Id. at 1230-31. Third, under the joint action approach, private actors can be state actors if they willfully participate in joint action with the state. Id. at 1231. Finally, under the state compulsion approach, a private entity acts as the state when some state law or custom requires a certain course of action. Id. at 1232. With all of the approaches, identifying the challenged action is important, as an entity may be a state actor for some purposes, but not for others. See, e.g, Lee, 276 F.3d at 555 n.5 (citing George, 91 F.3d at 1250).

KPMG argues that, because it is a private entity, Plaintiffs' § 1983 claims against it[7] must fail, as Plaintiffs have not alleged sufficiently that it engaged in any state action. Further, KPMG argues that, because Plaintiffs have failed to materially amend the allegations against it, the Court should dismiss the claims as it did with regard to those in the SAC. In response, Plaintiffs make several arguments. First, Plaintiffs state that KPMG is performing a public function, as the City is required to perform the auditing services it delegated to KPMG. Further, Plaintiffs argue that the question of whether KPMG is performing a public function is a question of fact. Second, Plaintiffs maintain that KPMG should be considered a state actor because it meets the joint action

////

[7] Plaintiffs bring two § 1983 claims against KPMG in the TAC: (1) violation of the Contracts Clause, art. I, § 10; and (2) conspiracy to violate civil rights. In their response in opposition to KPMG's motion, however, Plaintiffs argue that they have alleged facts sufficient to state a cause of action against KPMG for violating Plaintiffs' procedural due process rights. In the TAC, Plaintiffs do not allege a procedural due process claim against KPMG. (See TAC ¶¶ 141-48.) In any event, as discussed, the Court dismisses Plaintiffs' § 1983 claims against KPMG because Plaintiffs have not alleged that KPMG is a state actor.

test described above. Third, Plaintiffs contend that they have alleged a civil rights conspiracy involving KPMG.

Under the public function analysis, Plaintiffs have not alleged, and the cases to which they cite do not hold, that the auditing and accounting services at issue are functions traditionally and exclusively performed by the State. Cf. Lee, 276 F.3d at 554 (regulating speech in public forum is both traditional and exclusive public function). Instead, the TAC and documents Plaintiffs attach to the complaint indicate that KPMG was hired to perform an independent audit of financial statements. In support of their contention, Plaintiffs cite portions of the San Diego City Charter requiring the City to conduct auditing duties. (See, e.g., TAC ¶¶ 66-67.) Most of these references, however, relate to internal auditing and accounting functions. (See id. ¶ 66 (citing San Diego City Charter, art. VII, §§ 89 & 112).) Further, Plaintiffs cite to a sentence from art. VII, § 111 of the City Charter to support their argument that KPMG is performing a public function: "Each year the Council shall provide that an audit shall be made of all accounts and books of all the Departments of the City" (See id. ¶ 66.) The next sentence of § 111, however, which Plaintiffs omit from the TAC, states: "Such audit shall be made by independent auditors who are in no way connected with the City." San Diego City Charter, art. VII, § 111. Further, Plaintiffs allege elsewhere in the TAC, as well as in the exhibits attached to the pleading, that KPMG was engaged as an outside auditor. (See, e.g., TAC ¶¶ 5, 60, 67 (purpose and scope of audit); Ex. X at 12-15 (KPMG retained as outside auditor).) In short, as with regard to the SAC, because Plaintiffs have failed to explain why the auditing and accounting services at issue are those traditionally and exclusively performed by the state, they have failed to allege that KPMG is a state actor under the public function test.

Under the joint action approach, as in the SAC, Plaintiffs have not alleged in the TAC that "the state has 'so far insinuated itself into a position of interdependence with [the private entity] that it must be recognized as a joint participant in the challenged

activity.'" Gorenc v. Salt River Project Agric. Improvement & Power Dist., 869 F.2d 503, 506 (9th Cir. 1989) (citing Burton v. Wilmington Parking Auth., 365 U.S. 715, 725 (1961)). In support, Plaintiffs state that the agents and representatives of the City currently under investigation or indictment are benefitting from KPMG's delay in issuing its audit. Further, Plaintiffs contend that the City is benefitting as well because it will have to indemnify the individuals as to damages resulting from their performance of employment duties for the City. Contrary to Plaintiffs' arguments, however, the TAC alleges that City officials have complained about the timing of the KPMG audit. (See, e.g., TAC ¶¶ 62-64.) Further, as noted above, the exhibits Plaintiffs attach to the complaint indicate that the City hired KPMG to perform an independent audit of financial statements. Finally, although Plaintiffs cite to one of this Court's orders regarding allegations as to the City in San Diego Police Officers' Association v. Aguirre, those rulings are not germane to the issue of whether KPMG is a state actor for purposes of stating a claim under § 1983.

Plaintiffs also assert that conspiracy allegations in the TAC demonstrate that KPMG was a joint participant with the City, and thus, should be considered a state actor. As with regard to the SAC, however, these conspiracy allegations do not detail actions by KPMG, and even assuming they sufficiently allege a conspiracy involving some Defendants, they do not connect KPMG to the allegations making up Plaintiffs' constitutional violations. Further, as just noted, rulings by this Court as to the sufficiency of conspiracy allegations against the City in San Diego Police Officers' Association v. Aguirre have little relevance to the question of KPMG's status as a state actor.

Finally, Plaintiffs do not argue that KPMG is a state actor under the nexus or coercion tests. Accordingly, under any of the approaches described above, Plaintiffs have not alleged a relationship between the challenged funding actions and KPMG, let alone such a close connection that "seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood Academy, 531 U.S. at 295. Taking the

allegations as true for purposes of this motion to dismiss, they fall short of showing the close relationship necessary to consider KMPG a state actor for purposes of § 1983 liability. Therefore, the Court **DISMISSES** Plaintiffs' § 1983 claim against KPMG based upon alleged violations of the Contracts Clause without leave to amend. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

Regarding Plaintiffs' § 1983 conspiracy claim against KPMG, as discussed above, to state a claim for a conspiracy to violate one's constitutional rights under § 1983, a "plaintiff must state specific facts to support the existence of the claimed conspiracy." Burns, 883 F.2d at 821; Olsen, 363 F.3d at 929. To meet this standard, a plaintiff must allege "which defendants conspired, how they conspired and how the conspiracy led to a deprivation of his constitutional rights . . . ." Harris, 126 F.3d at 1196. Private parties may be held liable under § 1983 for conspiracy to violate civil rights "if they willfully participate in joint action with state officials to deprive others of constitutional rights." Phelps Dodge Corp., 865 F.2d at 1540. In addition to the general pleading requirements for conspiracy claims, to allege sufficiently a conspiracy between state actors and a private party, a plaintiff must demonstrate "an agreement or meeting of the minds to violate constitutional rights." Id. at 1540-41 (quotations omitted); Mendocino Envtl. Ctr., 192 F.32d at 1301(quoting Phelps Dodge Corp.). To be liable, "each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Phelps Dodge, 865 F.2d at 1541.

KPMG argues that the Court should dismiss the § 1983 conspiracy claim because Plaintiffs have failed to meet the heightened pleading requirement for conspiracy. Further, KPMG argues that Plaintiffs' additional allegations in the TAC demonstrate that Plaintiffs' conspiracy claim against KPMG must fail. Plaintiffs oppose, arguing that they have stated a claim and largely relying on this Court's rulings as to the

sufficiency of conspiracy allegations against the City in San Diego Police Officers' Association v. Aguirre.

Looking at the allegations in the TAC, Plaintiffs have failed to set forth a conspiracy claim against KPMG. As in the SAC, Plaintiffs allege that KPMG and the City conspired to conceal the City's "true assets, liabilities, misrepresentations, fraud and misconduct." (TAC ¶ 9; see also id. ¶ 69.) Plaintiffs do not plead any facts to support this assertion, however. Similarly, Plaintiffs allege that KPMG and the City had a "meeting of the minds," (id. ¶ 69), but they do not allege any facts indicating an agreement to delay issuance of the audit report. Rather, the allegations Plaintiffs have added in the TAC demonstrate the opposite. Plaintiffs allege that City officials have criticized KPMG for delaying the audit report, not that they have agreed to the delay. (See, e.g., id. at 61-62.) Further, Plaintiffs include allegations in which Defendant Aguirre states that KPMG has "breached its fundamental duty to the City of San Diego." (Id. ¶ 62 (emphasis omitted).) In short, Plaintiffs do not allege any meeting of the minds to violate constitutional rights. Likewise, Plaintiffs have not alleged that KPMG delayed the audit report for the purpose of violating Plaintiffs' constitutional rights. See Mendocino Envtl. Ctr., 192 F.3d at 1301.

Finally, as they did with regard to the SAC, Plaintiffs again largely rely on this Court's ruling denying the City's motion to dismiss the conspiracy claims in SDPOA v. Aguirre. KPMG is not a party in that case, and more importantly, the allegations against the City in that case are different than the allegations against KPMG here. As discussed above, Plaintiffs' allegations do not connect KPMG to any of the alleged underfunding actions and compensation decisions. Other than in conclusory language, Plaintiffs have not alleged material facts demonstrating any "meeting of the minds to violate constitutional rights" against KPMG. See Mendocino Envtl. Ctr., 192 F.32d at 1301. Accordingly, the Court **DISMISSES** Plaintiffs' § 1983 conspiracy claim against KPMG.

/ / / /

In sum, the Court **DISMISSES** Plaintiffs' § 1983 claims against KPMG, but the Court will allow Plaintiffs a further attempt to amend as to the conspiracy claim. Plaintiffs, however, must cure the deficiencies in an amended complaint. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

**N. Declaratory Relief as to KPMG**

KPMG argues that the Court should dismiss any claims for declaratory relief against it because none of the allegations have anything to do with KPMG. Further, they highlight that the TAC contains the same allegations as those the Court found insufficient in the SAC. Plaintiffs oppose, arguing that the declaratory relief is necessary and that the Court found similar allegations sufficient to state a claim against the City.

In their claim for declaratory relief, Plaintiffs again ask the Court to enter declaratory judgment on various alleged controversies. (See TAC ¶ 209.1.) Most of the requests relate to actions by the City, and thus, do not involve KPMG. Nevertheless, in three of their requests, Plaintiffs seek declaratory judgment against "Defendants," generally. (Id. ¶ 209.1(b), (k) & (r).) Looking at those three requests, however, Plaintiffs do not allege that KPMG had any involvement with the disputes.

First, Plaintiffs request a determination whether any Defendant breached a fiduciary duty owed to Plaintiffs by allowing retirement fund contribution to be deferred, delayed, or diverted. (Id. ¶ 209.1(b).) Plaintiffs do not, however, allege that KPMG owed such a fiduciary duty to Plaintiffs or how any of KPMG's actions related to any funding decisions. Second, Plaintiffs again ask the Court to determine whether any Defendant owed fiduciary duties and to whom those duties were owed, to determine the contours of any such duties, and to determine to what extent any breaches of fiduciary duties damaged the financial soundness of the retirement fund. (Id. ¶ 209.1(k).) Even assuming this broad request sets forth an actual controversy, see

28 U.S.C. § 2201(a), Plaintiffs do not allege KPMG owed Plaintiffs any fiduciary duties, and they do not allege how any of KPMG's activities related to damaging the financial soundness of the retirement fund. Third, Plaintiffs ask the Court to determine whether the City or other Defendants violated the Brown Act. (TAC ¶ 209.1(r).) As discussed above, the Brown Act, Cal. Gov. Code § 54950 et seq., generally requires local government bodies to conduct meetings in public. Plaintiffs do not allege, however, that KPMG is subject to the Brown Act or that it somehow violated the act. Thus, Plaintiffs provide no basis for this claim for declaratory relief against KPMG.

In sum, Plaintiffs have failed to allege facts sufficient to state a claim for declaratory relief against KPMG. Accordingly, the Court **DISMISSES** Plaintiffs' claims for declaratory relief against KPMG. Further, given that Plaintiffs did not make any substantive changes to this claim in the TAC, the Court declines to allow leave to amend. See, e.g., Royal Ins. Co. of Am., 194 F.3d at 1016-17 & n.9 (when denying leave to amend, court may consider late attempts to add new theories, futility of amendment, and prior attempts to cure deficiencies).

**O. KPMG's Request for Attorneys' Fees**

In their motion, KPMG requests that the Court award KPMG its attorneys' fees pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 1927.

In an action brought under 42 U.S.C. § 1983, "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs[.]" 42 U.S.C. § 1988(b). While a prevailing defendant may recover fees from a plaintiff under § 1988, the court must find that the plaintiff's lawsuit was frivolous, unreasonable, or without foundation. See Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978) (interpreting Title VII); Hughes v. Rowe, 449 U.S. 5, 14-15 (1980) (applying Christiansburg standard to fee request under § 1988 and stating that, for defendant to recover fees, plaintiff's action must be groundless or without foundation).

Under 28 U.S.C. § 1927:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings

> in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

An award under § 1927 requires a showing of bad faith. See, e.g., Wages v. IRS, 915 F.2d 1230, 1235 (9th Cir. 1990) (awarding fees under § 1927 where plaintiff attempted to file amended complaint without material alterations from the one already dismissed and where plaintiff continually moved for alterations in district court's original judgment).

The Court declines to impose an award of attorneys' fees under either provision. The Court does not find any bad faith or vexatious conduct on the part of Plaintiffs. Further, the Court does not find that Plaintiffs' allegations against KPMG are frivolous.

**Conclusion**

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Defendant City of San Diego and the Individual Defendants' motion to dismiss; **GRANTS** in part and **DENIES** in part Defendant Michael Aguirre's motion to dismiss; **GRANTS** Defendant SDCERS' motion to dismiss; and **GRANTS** Defendant KPMG's motion to dismiss. Further, the Court grants in part Plaintiffs leave to amend as noted in this order within 30 days of the date of this order.

IT IS SO ORDERED.

DATED: March 8, 2007

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT

Copies To:
Gregory Peterson
Christopher Nissen
Castle, Petersen & Krause, LLP
4675 MacArthur Court, Suite 1250
Newport Beach, CA 92660

Peter Benzian
Latham & Watkins
600 West Broadway, Suite 1800
San Diego, CA

Rodney Perlman
Wehner & Perlman
1919 Santa Monica Blvd, Suite 210
Santa Monica, CA 90404

Reginald Vitek
Matthew Mahoney
Seltzer Caplan, McMahon & Vitek
750 B Street, Suite 2100
San Diego, CA 92101

Robert Gooding
Martha Gooding
Stephen Cook
Howrey, LLP
2020 Main Street, Suite 1000
Irvine, CA 92614