1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

11   ERICA AARON, et al.,                               CASE NO. 06-CV-1451 H (POR)

12                          Plaintiffs,      **ORDER GRANTING**
                                             **DEFENDANTS' MOTIONS FOR**
13        vs.                                **SUMMARY JUDGMENT WITH**
                                             **RESPECT TO PLAINTIFFS'**
14   MICHAEL AGUIRRE, et al.,                **FEDERAL CLAIMS AND**
                                             **DISMISSING WITHOUT**
15                          Defendants.      **PREJUDICE PLAINTIFFS'**
                                             **STATE CLAIMS**
16

         Presently before the Court are motions for summary judgment, partial summary

17
judgment, or summary adjudication by several defendants in this action.  (See Doc. Nos. 242,

18
246, 250.)  Plaintiffs have filed responses in opposition.  (See Doc. Nos. 285-288.)  Defendants

19
filed replies on August 22, 2008.  (Doc. Nos. 289-291.)

20
         On September 2, 2008, the Court held a hearing on defendants' motions.  Gregory

21
Petersen appeared on behalf of the Plaintiffs he represents; Christopher Nissen and Kim

22
Nguyen represented the remaining Plaintiffs.  Reginald Vitek appeared for defendant

23
SDCERS. Donald McGrath and Rodney M. Perlman appeared for defendant Michael Aguirre.

24
Peter H. Benzian and Colleen Smith represented the City and the individual defendants.

25
         For the reasons discussed below, the Court concludes that Plaintiffs fail to demonstrate

26
a genuine issue for trial with respect to Plaintiffs' federal claims and therefore grants summary

27
judgment in Defendants' favor with respect to those claims.  The Court declines to continue

28
to exercise supplemental jurisdiction over Plaintiffs' state law claims and therefore dismisses

those claims without prejudice.  The Court notes that its decision does not leave Plaintiffs without the possibility of a remedy, since Plaintiffs are free to pursue their state law claims, if any, in an appropriate state court forum, where extensive litigation over these issues is ongoing involving these and other parties.

## Background

Plaintiffs' federal claims in this case arise from (1) the alleged under funding of the San Diego City Employees Retirement System ("SDCERS") and (2) the terms of the City's last, best and final offer ("LBFO"), which the City implemented following failed labor negotiations between the City and the San Diego Police Officers Association ("SDPOA") in 2005.  (See FAC ¶¶ 14, 172-213, 238-249, 255-258.)  The SDPOA is the organization that represents police officers employed by the City.

## I.    This Case – Operative Complaint and Remaining Claims/Defendants

This action commenced on July 18, 2006.  (Doc. No. 1.)  The individual police officer plaintiffs filed a complaint against Michael Aguirre; the City of San Diego ("City"); SDCERS; several current and/or former City Council members and City officials; KPMG LLP; and KPMG.  (Doc. No. 1.)  Plaintiffs' complaint asserted five federal claims under 42 U.S.C. § 1983: (1) retaliation in violation of the First Amendment, as to Aguirre, the City and the Individual Defendants, see Compl. ¶ 65; (2) violation of the Contracts Clause, U.S. Const., art. I, § 10, as to all defendants, see Compl. ¶ 72; (3) violation of the Takings Clause, as to all defendants, see Compl. ¶ 79; (4) violation of procedural due process, as to all defendants, see Compl. ¶ 86; and (5) conspiracy to violate the federal rights asserted in the previous four claims, as to all defendants, see Compl. ¶ 94.  Plaintiffs' complaint asserted several state law claims pursuant to the Court's supplemental jurisdiction under 28 U.S.C. § 1367.  (Compl. ¶ 1.)

On April 9, 2007, following extensive motion practice directed at the sufficiency of Plaintiffs' allegations, Plaintiffs filed a fourth amended complaint ("FAC"), see Doc. No. 139, which is the operative complaint in this action.  Plaintiffs' FAC asserts claims against Aguirre; the City; SDCERS; council members Scott Peters, Jim Madaffer, Ralph Inzunza,

1   Toni Atkins, Tony Young, Brian Maienschein, Donna Frye and Michael Zucchet, City

2   officials Cathy Lexin, Mary Vattimo, Terri Webster, Ed Ryan, Bruce Herring, Lamont

3   Ewell and Michael Uberuaga ("Individual Defendants"); KPMG LLP and KPMG.  (Doc.

4   No. 139.)  The FAC alleges claims under § 1983 and various state law claims.

5         On June 12, 2007, the Court issued an order granting in part and denying in part

6   several motions to dismiss Plaintiffs' FAC, with the result that the following federal claims

7   remain:

8         •     As to Defendant Aguirre, Plaintiffs' remaining claims are § 1983 claims for

9               violation of the Contracts Clause, Takings Clause, procedural due process,

10              and conspiracy to violate Plaintiffs' civil rights.  The Court granted Aguirre's

11              motion to dismiss Plaintiffs' First Amendment retaliation claim, on the

12              ground of qualified immunity.  (<u>See</u> Doc. No. 167.)

13        •     As to the City and most of the Individual Defendants, all five of Plaintiffs'

14              federal claims remain.  With respect to individual defendants Young and

15              Zucchet, the Court dismissed all of Plaintiffs' under funding claims.

16              (<u>See</u> Doc. No. 167.)

17        •     As to SDCERS, Plaintiffs' remaining claims are § 1983 claims for violation

18              of the Contracts Clause, the Takings Clause and procedural due process.

19              Plaintiff's fourth amended complaint did not assert a First Amendment

20              retaliation claim against SDCERS, and the Court granted (without leave to

21              amend) SDCERS's motion to dismiss Plaintiffs' conspiracy claim.  (<u>See</u> Doc.

22              No. 167.)

23  **II.    <u>SDPOA v. Aguirre</u>, Case No. 05-CV-1581 H (POR)**

24        On August 9, 2005, the SDPOA filed a complaint against Aguirre, the City,

25  SDCERS and individual Council members and City officials.  (<u>SDPOA</u> Doc. No. 1.)  The

26  SDPOA represents police officers employed by the City, and the SDPOA's complaint

27  specified (as did subsequent amended complaints) that the SDPOA brought the action on

28  behalf of its members.  The SDPOA's complaint asserted state law claims as well as the

1     following federal claims under § 1983: (1) retaliation in violation of the First Amendment;

2     (2) violation of the Contracts Clause, U.S. Const., art. I § 10; (3) violation of the Takings

3     Clause of the Fourteenth Amendment; and (4) conspiracy to commit the foregoing civil

4     rights violations.  (SDPOA Doc. No. 1.)

5         After motion practice directed at the sufficiency of the SDPOA's pleadings, as well

6     as motions for injunctive relief, the SDPOA filed a third amended complaint on March 21,

7     2006.  (SDPOA Doc. No. 353.)  On June 9, 2006, the Court issued an order granting in part

8     and denying in part motions to dismiss by the defendants.[1]  (SDPOA Doc. No. 406.)  After

9     the close of extensive discovery, the parties filed motions and cross motions for summary

10    judgment, partial summary judgment, or summary adjudication.  The Court permitted

11    supplemental briefing and heard oral argument.  (See SDPOA Doc. No. 737.)  On May 18,

12    2007, the Court issued an order granting summary judgment in the defendants' favor on the

13    SDPOA's federal claims in several respects that have significance to the present case.  (Id.)

14        After additional supplemental briefing and a further hearing, the Court on June 26,

15    2007 entered an order granting summary judgment in the defendants' favor with respect to

16    the SDPOA's remaining federal claims.  (SDPOA Doc. No. 753.)  The Court declined to

17    continue to exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the SDPOA's

18    remaining state law claims.  On August 24, 2007, the Court directed the Clerk to enter final

19    judgment against the SDPOA and in favor of the defendants.  (SDPOA Doc. No. 766.)

20        The crux of the motions before the Court in the present case is that certain issues

21    resolved by the Court in its summary judgment rulings in the SDPOA action have

22    preclusive effect against Plaintiffs here.  Accordingly, the Court provides the following

23    brief summary of its two summary judgment orders in the SDPOA case:

24        •    First Amendment Retaliation: The SDPOA alleged that Aguirre, the City,

25            and the Individual Defendants imposed the 2005 LBFO and publicly

26            criticized the SDPOA in retaliation for the SDPOA and its members engaging

27

28       [1]    Approximately two months later, the individual plaintiffs filed the complaint that commenced this case.

in protected speech.  The Court granted summary judgment in the defendants'
favor on this claim.  With respect to Aguirre, the Court concluded that the
SDPOA failed to point to evidence indicating that Aguirre exerted control
over the 2005 labor negotiations and the terms of the LBFO, or evidence
showing that Aguirre orchestrated the City's imposition of the 2005 LBFO as
a form of retaliation for the SDPOA's failure to go along with Aguirre's plan
to improve the City's financial situation.  (See SDPOA Doc. No. 737 at p.
22.)  With respect to all defendants, the Court concluded that Plaintiff could
not establish that the protected expression of the SDPOA and/or its members
was a "substantial motivating factor for the implementation of the 2005
LBFO."  (Id. at p. 31.)

- Contracts Clause and Takings Clause: The SDPOA brought a claim for
violation of the Contracts Clause and Takings Clause of the U.S.
Constitution.  With respect to the 2005 LBFO, the Court concluded that the
SDPOA failed to demonstrate a genuine issue for trial regarding whether the
terms of the LBFO affected protectable benefits.  (SDPOA Doc. No. 737 at p.
34.)  Accordingly, the SDPOA's Contracts Clause and Takings Clause claims
failed as to all defendants to the extent those claims were based on the 2005
LBFO.  In the Court's June 26, 2007 order regarding the SDPOA's remaining
federal claims, the Court concluded that the SDPOA failed to demonstrate the
existence of a federal constitutional right to an actuarially sound pension
system.  Accordingly, the SDPOA's Contracts Clause and Takings Clause
claims also failed to the extent those claims were based on pension under
funding.  (See SDPOA Doc. No. 753.)

- Conspiracy: Since the Court granted summary judgment in all defendants'
favor on the SDPOA's First Amendment, Contracts Clause and Takings
Clause claims, no federal claim remained.  In the absence of an actionable
federal constitutional violation, a conspiracy to violate federal constitutional

1   rights cannot exist as a matter of law.  Accordingly, the Court granted

2   summary judgment in all defendants' favor and against the SDPOA on the

3   SDPOA's conspiracy claim under § 1983.  (SDPOA Doc. No. 753 at p. 12;

4   see also SDPOA Doc. No. 737 at p. 43.)

5          The Court concludes that the doctrine of issue preclusion bars Plaintiffs from re-

6   litigating those issues in this case.  This negates at least one essential element of each of

7   Plaintiffs' federal claims, making summary judgment in Defendants' favor warranted on

8   those claims.

9                                            **Discussion**

10   **I.       Summary Judgment – Legal Standard**

11          Summary judgment is appropriate when "the pleadings, the discovery and disclosure

12   materials on file, and any affidavits show that there is no genuine issue as to any material

13   fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

14   The moving party bears the burden of demonstrating the absence of a triable issue of fact.

15   That burden may be satisfied, however, "by showing – that is, pointing out to the district

16   court – that there is an absence of evidence to support the non-moving party's case."

17   Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  To be entitled to summary judgment, a

18   defendant need not disprove each element of a plaintiff's claims.  E.g., Nissan Fire &

19   Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  Rather, a defendant

20   may succeed either by negating a single essential element of each claim, or by

21   demonstrating that the plaintiff cannot establish the existence of a genuine issue on a single

22   essential element of each claim.  Id.

23          Once the party moving for summary judgment satisfies its burden of pointing out

24   that there is an absence of evidence to support the non-moving party's case, Celotex Corp.,

25   477 U.S. at 325, to avoid summary judgment a plaintiff must set forth specific facts

26   showing the existence of a genuine issue.  It is not sufficient to "simply show that there is

27   some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith

28   Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party must point to specific

1   evidence "from which a reasonable jury could return a verdict in its favor."  Triton Energy

2   Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

3   **II.      Issue Preclusion – Legal Standards**

4          A nonparty may be bound by a prior judgment because the nonparty "was

5   adequately represented by someone with the same interests who was a party to the suit."

6   Taylor v. Sturgell, ___ U.S. ___, 128 S.Ct. 2161, 2172 (2008).  The general principle of

7   issue preclusion "is that a right, question, or fact distinctly put in issue and directly

8   determined by a court of competent jurisdiction, as a ground of recovery, cannot be

9   disputed in a subsequent suit between the same parties or their privies."  Southern Pacific

10  Railroad v. United States, 168 U.S. 1, 48-49 (1897).  Under the Ninth Circuit's modern

11  formulation of the doctrine, the party seeking to apply issue preclusion must establish that

12  (1) the party to be precluded (or that party's privy) had a full and fair opportunity to litigate

13  the issue; (2) the issue was actually litigated and decided; (3) the party sought to be

14  precluded lost on the issue as a result of a final judgment; and (4) the party to be precluded

15  was a party to the prior action or stood in privity to a party in the prior action.  State of

16  Idaho Potato Comm'n. v. G & T Terminal Packaging, Inc., 425 F.3d 708, 713 (9th Cir.

17  2005).

18  **III.     Whether Plaintiffs Have a Commonality of Interest With the SDPOA**

19          The primary dispute for purposes of Defendants' motions for summary judgment is

20  whether Plaintiffs are in privity with respect to the SDPOA, which acted as the plaintiff in

21  the prior case.  Generally, issue preclusion extends only to parties and persons in "privity"

22  with a party. See Wright, Miller & Cooper, Fed. Practice and Procedure 2d § 4448.

23  Although older definitions of privity were very narrow, "[a]s the preclusive effects of

24  judgments have expanded to include nonparties in more and more situations, . . . it has

25  come to be recognized that the privity label simply expresses a conclusion that preclusion is

26  proper."  See id. § 4449.  As the Ninth Circuit has recognized, privity is "a legal conclusion

27  designating a person so identified in interest with a party to former litigation that he

28  represents precisely the same right in respect of the subject matter involved."  In re

Schimmels, 127 F.3d 875, 881 (9th Cir. 1997); see Taylor v. Sturgell, 128 S.Ct. at 2172 n. 8 (noting that privity has "come to be used more broadly, as a way to express the conclusion that nonparty preclusion is appropriate on any ground").

"[P]rivity may exist if there is substantial identity between parties, that is, when there is sufficient commonality of interest." Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d 1064, 1081 (9th Cir. 2003); see Taylor v. Sturgell, 128 S.Ct. at 2172 ("nonparty may be bound by a judgment because she was adequately represented by someone with the same interests who was a party to the suit"). The Ninth Circuit has used this "commonality of interest" standard in several cases to support a conclusion of privity. Stratosphere Litigation L.L.C. v. Grand Casinos, Inc., 298 F.3d 1137, 1142 n. 3 (9th Cir. 2002) (finding privity when a party is "so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved"); Shaw v. Hahn, 56 F.3d 1128, 1131-32 (9th Cir. 1995) (finding privity when the interests of the party in the subsequent action were shared with and adequately represented by the party in the former action); United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980) ("a privy may include those whose interests are represented by one with authority to do so"); see also In re Schimmels, 127 F.3d at 881 (noting that privity has been found "where the interests of the nonparty and party are so closely aligned as to be virtually representative").

Significantly, "[o]ne of the relationships that has been deemed sufficiently close to justify a finding of privity is that of an organization or unincorporated association filing suit on behalf of its members. Tahoe Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 322 F.3d  at 1082. "[T]he organization must adequately represent the interests of its individual members" in order that issue preclusion does not violate the due process rights of the individual members. Id. "However, if there is no conflict between the organization and its members, and if the organization provides adequate representation on its members' behalf, individual members not named in a lawsuit may be bound by the judgment won or lost by their organization." Id. In this case, the record does not support

1   the conclusion that the SDPOA provided inadequate representation on its members' behalf.

2   Indeed, Plaintiffs would be hard pressed to establish that point, since the same lawyers have

3   represented the SDPOA and the Plaintiffs here.

4        Here, the Court concludes that for purposes of issue preclusion privity exists

5   between the SDPOA and the Plaintiffs in the present case.  First, the Court concludes that

6   there is "substantial identity" and "commonality of interest" between the SDPOA and the

7   individual police officers who are the Plaintiffs in this action.  Tahoe Sierra Preservation

8   Council, Inc., 322 F.3d at 1081.  The SDPOA is the organization representing police

9   officers who are employed by the City.  Every complaint and amended complaint in the

10  prior case alleged that the SDPOA brought the action on behalf of its members.  (See

11  SDPOA Doc. No. 353, TAC ¶ 3.)  Under the legal standards for establishing organizational

12  standing, the SDPOA was required to establish that "(a) its members would otherwise have

13  standing to sue in their own right; (b) the interests it seeks to protect are germane to the

14  organization's purpose; and (c) neither the claim asserted nor the relief requested requires

15  the participation of individual members of the lawsuit."  Hunt v.  Washington State Apple

16  Advertising Comm'n., 432 U.S. 333, 343 (1977).  In the SDPOA action, the Court

17  specifically concluded that the SDPOA met those requirements.[2]  (See SDPOA Doc. No.

18  335.)

19       Since the federal claims in both cases arise out of the same factual occurrences, the

20  fact that the SDPOA's members would have had standing to sue in their own right in the

21  first action demonstrates the high degree of "identity" and "commonality of interest"

22  between the SDPOA in the first case and Plaintiffs here.  Tahoe Sierra Preservation

23  Council, Inc., 322 F.3d at 1081.  Under all the circumstances of the SDPOA action, a suit

24  by an organization on its members' behalf may have preclusive effect as to the

25  organization's members even if they were not named parties to the first action.  Id.; see also

26

27       [2]       Plaintiffs focus on the Court's conclusion that the SDPOA could not seek monetary
    relief on behalf of its members.  (See SDPOA Doc. No. 335.)  However, that is irrelevant for purposes
28  of these motions for summary judgment.  Plaintiffs must first establish Defendants' liability before
    seeking damages.  Defendants' motions are premised on the contention that issues decided in the
    SDPOA action have preclusive effect in a manner that is fatal to Plaintiffs' theories of recovery.

Monahan v. New York City Dept. of Corrections, 214 F.3d 275, 285 (2d Cir. 2000); Panza v. Armco Steel Corp., 316 F.2d 69, 70 (3d Cir. 1963) (holding that after a union lost an action to enforce contract seniority rights for a specific group of employees, the same employees could not bring an individual action to enforce the same claim).  Moreover, the Court concludes that several factors in addition to the SDPOA's status as Plaintiffs' representative weigh in favor of the conclusion that the SDPOA and Plaintiffs possess sufficient "commonality of interest" for preclusion purposes.  Tahoe Sierra Preservation Council, Inc., 322 F.3d at 1081.

The commonality of interest between the SDPOA and Plaintiffs is well illustrated by a comparison of the operative complaints in each action (third amended complaint in SDPOA; fourth amended complaint in this action).  The complaints, which were filed by the same lawyers, alleged (in nearly identical fashion) the same federal claims based on exactly the same set of facts and occurrences.  For instance, in both actions the first claim for relief is a § 1983 claim, based on First Amendment retaliation, against Aguirre, the City, the Council defendants and the City official defendants.  The SDPOA third amended complaint sought "injunctive relief directing Defendant City to immediately restore all benefits taken away from Plaintiff's Members by Defendant City's unilateral imposition of the Last, Best and Final Offer, [and to] fund SDCERS so it is actuarially sound."  (SDPOA Doc. No. 353, TAC  ¶ 77.)  The operative complaint in this action repeats almost verbatim that request, by seeking "injunctive relief directing Defendant City to immediately restore all past and future benefits and/or compensation taken away from LBFO Plaintiffs and DROP Plaintiffs as a result of the unilateral imposition of Defendant City's 2005 last, best and final offer."  (FAC ¶ 178.)

Moreover, the complaint in this case makes clear that Plaintiffs' legal claims do not involve any individualized allegations.  Although (assuming Plaintiffs succeeded in establishing Defendants' liability) individualized questions regarding damages might arise, it is clear that the federal claims in each case are otherwise identical.  Contrary to Plaintiffs' arguments, the SDPOA represented the interests of both active and retired police officers in

the prior action, and the Court concludes that the interests of the Plaintiffs in this case are identical to the interests of the SDPOA in the prior case for purposes of the federal claims. (Compare SDPOA Doc. No. 353 (TAC) ¶ 50 (allegations regarding under funding of retiree medical benefits) with Doc. No. 139 (the FAC in this case) ¶ 32 (SDPOA "facing reduced membership and pressure for current and former members about the status of pension and retirement benefits").)  After complete discovery in the SDPOA action, Plaintiffs have not amended the complaint in this case to allege any individualized theories of recovery.

   Looking beyond the complaints in each case, it is clear that the SDPOA action and this case have been conducted essentially in parallel.  The motion practice by the plaintiff(s) in each case provides a good example of this, since it has overlapped to such an extent that the Court on at least one occasion had to advise the lawyers representing the SDPOA and these Plaintiffs to be sure to file their papers in both cases.  In September of 2006, the SDPOA and the Plaintiffs in this case both sought temporary restraining orders staying state court proceedings relating to the pension crisis.  (See SDPOA Doc. No. 474.) The Court noted that "[t]he same counsel recently filed a related case, Aaron v. Aguirre, in the name of over 1,600 individual police officers.  The application for the temporary restraining order concerns both federal cases, and the Court has issued separate but identical orders in both dockets." (SDPOA Doc. No. 474.)  The Court denied the requests for a temporary restraining order and/or stay of the state court litigation, and noted that "the Court will deem the pleadings to have been filed in both SDPOA, 05-CV-1581-H and Aaron, 06-CV-1451-H." (SDPOA Doc. No. 474.)  The Court, however, advised counsel that in the future they "must file an original pleading for each docket." (Id.)  In addition to the factors discussed above, the manner in which these cases have been litigated supports the conclusion that a sufficiently high degree of "identity" and "commonality of interest" exists between the SDPOA in the first case and Plaintiffs here, such that Plaintiffs are subject to the preclusive effects of issues decided in the prior action.  See Tahoe Sierra Preservation Council, Inc., 322 F.3d at 1081.

In sum, the Court concludes that based on the above discussion and all the circumstances of this case and the prior action by the SDPOA, the Plaintiffs stand in privity to the SDPOA for purposes of issue preclusion as to the federal claims.  The Court concludes that applying issue preclusion to Plaintiffs furthers the purpose of the doctrine, which (subject to the restrictions of due process) is to "conserve[] judicial resources and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997); see Taylor, 128 S.Ct. at 2171. Accordingly, the Court concludes that Plaintiffs here are precluded from re-litigating issues that meet the other requirements for issue preclusion– i.e., issues that in the prior action were "actually litigated and decided" after Plaintiffs' representative had a "full and fair opportunity" to do so, and resulted in a "final judgment" adverse to Plaintiffs' representative.  See State of Idaho Potato Comm'n. v. G & T Terminal Packaging, Inc., 425 F.3d at 713.

**IV.   Additional Issue Preclusion Requirements**

In addition to demonstrating that there exists sufficient commonality of interest between Plaintiffs and the SDPOA, Defendants must establish that the relevant issues were "actually litigated and decided" after a "full and fair" opportunity to litigate the issues, and that the resolution of those issues resulted in a final judgment.  See State of Idaho Potato Comm'n. v. G & T Terminal Packaging, Inc., 425 F.3d at 713.  For each of the issues discussed below, the Court concludes that those requirements are satisfied.  In the SDPOA action, before ruling on the defendants' motions for summary judgment, the Court permitted extensive briefing and supplemental briefing and heard oral argument spanning two days regarding the SDPOA's federal claims.  (See SDPOA Doc. No. 737.)  After issuing an order granting summary judgment as to some of the SDPOA's federal claims, the Court once again permitted supplemental briefing regarding whether there exists a federal constitutional right to an actuarially sound pension system.  (See SDPOA Doc. No. 753.)  The Court concludes that this constituted a "full and fair" opportunity to litigate each issue specified below as having preclusive effect on Plaintiffs' federal claims in this case.

1      Additionally, the Court's orders in the <u>SDPOA</u> case make clear that each issue was

2 "actually . . . decided."  <u>See</u> <u>State of Idaho Potato Comm'n. v. G & T Terminal Packaging,</u>

3 <u>Inc.</u>, 425 F.3d at 713.  After deciding each issue in the summary judgment orders dated

4 May 18 and June 26, 2007, the Court by separate order directed the Clerk to enter final

5 judgment in the defendants' favor with respect to Plaintiffs' federal claims.  (<u>SDPOA</u> Doc.

6 No. 766.)  Therefore, the resolution of each issue set forth below "resulted in a final

7 judgment." <u>State of Idaho Potato Comm'n.</u>, 425 F.3d at 713.  The Court concludes that

8 Defendants have satisfied the requirements under the law for issue preclusion based on the

9 prior <u>SDPOA</u> action.

10 **V.     Which Issues Have Preclusive Effect**

11      The Court addresses in turn the preclusive effect of the federal issues decided in the

12 <u>SDPOA</u> action on Plaintiffs' federal claims in this case.

13      **A.     First Amendment Retaliation**

14      To prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) he

15 was subject to an adverse employment action; (2) "he engaged in speech that was

16 constitutionally protected because it touched on a matter of public concern and (3) the

17 protected expression was a substantial motivating factor for the adverse action." <u>Ulrich v.</u>

18 <u>City and County of San Francisco</u>, 308 F.3d 968, 976 (9th Cir. 2002).

19      In the <u>SDPOA</u> case, the Court concluded that "Defendants have demonstrated that

20 Plaintiff cannot establish that the protected expression of the SDPOA and its members was

21 a substantial motivating factor for the implementation of the 2005 LBFO."  (<u>SDPOA</u> Doc.

22 No. 737 at 31.)  The SDPOA failed to "direct[] the Court to evidence showing a disputed

23 issue of fact as to whether retaliation was a substantial motivating factor in the decision to

24 impose the 2005 LBFO."  (<u>Id.</u> at 29.)  Accordingly, the Court granted summary judgment

25 in the defendants' favor on the SDPOA's "First Amendment retaliation claims premised on

26 the 2005 negotiations and imposition of the LBFO."  (<u>Id.</u> at 31.)

27      For the reasons discussed above, the doctrine of issue preclusion bars Plaintiffs from

28 re-litigating this issue.  Accordingly, the Court concludes that Defendants have satisfied

their burden on summary judgment to demonstrate the absence of a genuine issue with respect to at least one essential element of Plaintiffs' First Amendment retaliation claim. See Celotex Corp., 477 U.S. at 325. Since Plaintiffs cannot establish that any protected expression by City police officers was "a substantial motivating factor" for the alleged retaliation by Defendants, the Court concludes that Defendants are entitled to summary judgment in their favor on Plaintiffs' First Amendment retaliation claim.

### B. Contracts Clause, Takings Clause and Procedural Due Process

As noted above, Plaintiffs' claims under the federal Contracts Clause and Takings Clause arise from the allegation that by under funding SDCERS and/or implementing the terms of the 2005 LBFO, Defendants unlawfully eliminated or reduced vested pension benefits owed to Plaintiffs.

The Contracts Clause of the federal Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10, cl. 1. However, the clause's "prohibition is not an absolute one." State of Nev. Employees' Assn. v. Keating, 903 F.2d 1223, 1226 (9th Cir. 1990). An impairment of state contractual obligations is permissible if it is "reasonable and necessary to serve an important public purpose." U.S. Trust Co. v. New Jersey, 431 U.S. 1, 25 (1977). Federal law controls whether state statutes create contractual rights that are protected by the Contract's Clause. See Keating, 903 F.2d at 1227.

To succeed on a Takings Clause claim, a plaintiff must prove that he or she possesses a constitutionally protected "property interest." Gammoh v. City of La Habra, 395 F.3d 1114, 1122 (9th Cir. 2005). To establish a constitutionally protected property interest, the plaintiff must show not merely a unilateral expectation but "a legitimate claim of entitlement." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). The scope of property interests protected by the Takings Clause is determined by "existing rules or understanding that stem from an independent source," such as state or federal statutory law. Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1030 (1992); see Bd. of Regents v. Roth, 408 U.S. at 577-78. Whether a particular interest is constitutionally protected is a question of federal law.

1    See Webb's Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155, 164 (1980).

2         In the SDPOA case, the Court concluded that the SDPOA failed to demonstrate a

3    genuine issue regarding whether the terms implemented in the 2005 LBFO affected

4    protectable benefits.  (SDPOA Doc. No. 737 at p. 34; see id. at p. 38 ("Plaintiff has not

5    demonstrated a triable issue regarding whether DROP salary is a vested interest subject to

6    constitutional protection under either the Contracts Clause or Takings Clause.") and p. 40

7    (no issue of material fact regarding whether decrease in City's pick up percentage violated

8    Takings or Contracts Clauses.)  Additionally, the Court concluded that the SDPOA failed

9    to demonstrate that it possesses a federal right to an actuarially sound pension system and,

10   therefore, could not demonstrate the existence of a genuine issue regarding the existence of

11   a constitutionally protected right under the Takings Clause or Contracts Clause.  (See

12   SDPOA Doc. No. 753 at p. 7.)

13        Based on the principles of issue preclusion, the Court concludes that Plaintiffs in this

14   case may not re-litigate the issues decided in the SDPOA action regarding the federal

15   Contracts Clause and Takings Clause claims.  Therefore, Defendants in this case have

16   satisfied their burden on summary judgment to demonstrate the absence of a genuine issue

17   for trial with respect to an essential element of Plaintiffs' claims under the Contracts Clause

18   and the Takings Clause.  Celotex Corp., 477 U.S. at 325.  Since Plaintiffs cannot establish

19   the deprivation of a protected interest for purposes of the Contracts Clause and the Takings

20   Clause, the Court concludes that summary judgment in Defendants' favor is warranted with

21   respect to those claims.  The same is true for Plaintiffs' federal procedural due process

22   claim, since succeeding on that claim requires Plaintiffs to establish the deprivation of a

23   federally protected right.  Parks v. Watson, 716 F.2d 646, 656 (9th Cir. 1983) ("A property

24   interest in a benefit protected by the due process clause results from a legitimate claim of

25   entitlement created and defined by an independent source, such as state or federal law.").

26        **C.    Conspiracy**

27        In the absence of an independent actionable federal constitutional violation, a

28   conspiracy to violate federal constitutional rights cannot exist as a matter of law.  E.g.,

Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989).  The Court already concluded that Defendants are entitled to summary judgment in their favor with respect to Plaintiffs' claims for violations of the First Amendment, the Contracts Clause, the Takings Clause and procedural due process.  Therefore, the Court concludes that Defendants satisfy their burden on summary judgment to demonstrate the absence of a genuine issue with respect to Plaintiffs' conspiracy claim.  The Court grants summary judgment in Defendants' favor on that claim.

In sum, the Court concludes that Plaintiffs in this case are bound the Court's determination in the prior action, brought by Plaintiffs' representative the SDPOA, that:

- Defendants' implementation of the 2005 LBFO was not substantially motivated by retaliatory intent.
- Plaintiffs do not have a federally protected right to an actuarially sound pension system.
- Even assuming that Plaintiffs possessed constitutionally protected rights in an adequately funded pension system, the mitigating measures implemented by Defendants establish that any such rights were not "substantially impaired."
- The 2005 LBFO did not impair any vested contractual rights protected by federal law.

As in the previous action, the Court's conclusions regarding these issues dooms Plaintiffs' federal claims based on under funding as well as the terms of the 2005 LBFO. The Court therefore grants summary judgment in all Defendants' favor with respect to Plaintiffs' federal claims.

**VI.    Plaintiffs' Remaining State Law Claims – Supplemental Jurisdiction**

Since no federal claims remain as to any defendant, Defendants contend that the Court should decline to continue to exercise supplemental jurisdiction over Plaintiffs' state law claims and therefore dismiss those claims.  Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction over a state claim if "the district court has dismissed all claims over which it has original jurisdiction" or if, "in exceptional

06cv1451

1  circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C.

2  § 1367(c)(3)-(4).

3      Ordinarily, a court should dismiss the state claims when all federal claims have been

4  resolved prior to trial.  See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726

5  (1966) ("Certainly, if the federal claims are dismissed before trial . . . the state claims

6  should be dismissed as well."); Acri v. Varian Associates, Inc., 114 F.3d 999, 1000-1001

7  (9th Cir. 1997) (en banc).  Declining to exercise supplemental jurisdiction is especially

8  appropriate when the remaining state claims involve "important, unsettled, and policy-

9  laden issues of California law."  Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1181 n. 28

10  (9th Cir. 2003).  If a court concludes that it should decline to exercise supplemental

11  jurisdiction over a plaintiff's state law claims, the court should dismiss those claims

12  without prejudice.  Gini v. Las Vegas Metro. Police Dept., 40 F.3d 1041, 1046 (9th Cir.

13  1994).

14      Here, none of Plaintiffs' federal claims remain.  Accordingly, the Court may dismiss

15  the state claims pursuant to 28 U.S.C. § 1367(c)(3).  Additionally, several of Plaintiffs'

16  state law claims involve complex policy-laden questions of California law.  For instance,

17  Plaintiffs bring a claim for "violations of public policy" under the California Pension

18  Protection Act of 1992.  (See FAC ¶ 212.)  Plaintiffs' state law claims involve sensitive

19  questions of substantial local importance, since they involve a municipal employee pension

20  system and questions regarding the administration and funding of that system.  Several

21  cases are pending in state court that raise the same complex and sensitive issues of state law

22  and policy asserted by Plaintiffs in this case.  At the September 2, 2008 hearing on

23  Defendants' motions for summary judgment, counsel for defendants noted that in

24  September of 2007, the SDPOA filed another lawsuit in California court regarding the

25  same issues dismissed without prejudice in this case.

26      In view of all the circumstances of this case, including the ongoing state court

27  litigation related to the issues in this case, the Court concludes that in addition to the

28  dismissal of Plaintiffs' federal claims there are "compelling reasons" within the meaning of

28 U.S.C. § 1367(c)(4) to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.  By granting summary judgment in Defendants' favor with respect to Plaintiffs' federal claims, the Court leaves the California state courts free to resolve Plaintiffs' complex state law claims regarding pension funding and the implementation of the 2005 LBFO.  The Court's decision here leaves Plaintiffs free to pursue their state claims (if any) in an appropriate state forum.  The Court also concludes that any preclusion arguments with respect to Plaintiffs' state claims should be addressed by the state courts.  For all of the reasons cited above, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims and dismisses those claims without prejudice.

## VII.    Plaintiffs' Renewed Request to Stay

Plaintiffs request that the Court stay this action while the SDPOA action remains pending on appeal.  In December of 2007, Plaintiffs made a similar request for stay, see Doc. No. 188, which the Court denied.  (Doc. No. 193.)  Defendants oppose Plaintiffs' request for a stay, and for the following reasons the Court once again denies a stay.

The power to stay a case is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. North American Co., 299 U.S. 248, 254-55 (1936); see CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).  The decision to grant or deny a stay is within the sound discretion of the trial court.  CMAX, Inc., 300 F.2d at 268.  Courts frequently consider judicial economy and prejudice to the parties in determining whether to grant a stay.  Landis, 299 U.S. at 254-55.  Here, considering all the circumstances of the present case, the Court once again concludes that a stay of this action would not advance the interests of judicial economy and is not necessary to avoid potential prejudice to the parties.  Therefore, the Court in its discretion denies Plaintiffs' renewed request for a stay.

## VIII.   Requests for Judicial Notice

The Court grants SDCERS's request, see Doc. No. 244, for judicial notice of various pleadings, orders and judgments in the SDPOA action and the cases Gleason v. San Diego

1  City Employees' Retirement System, et al., San Diego Superior Court Case No. GIC

2  803779; and William McGuigan v. City of San Diego, et al., San Diego Superior Court

3  Case No. GIC 849883.  The Court concludes that the requested documents are proper

4  subjects of a request for judicial notice under Fed. R. Evid. 201.  See Lee v. City of Los

5  Angeles, 250 F.3d 668 (9th Cir. 2001); Quackenbush v. Allstate Ins. Co., 121 F.3d 1372,

6  1377 n.3 (9th Cir. 1997).  Similarly, the Court grants the requests for judicial notice by

7  Aguirre, the City and the Individual Defendants, as well as the request by Plaintiffs.  (Doc.

8  Nos. 246-5; 250-3; 285-5.)  Finally, as requested by SDCERS, see Doc. No. 244, the Court

9  takes judicial notice of the pleadings and other documents in this case.

10                                        **Conclusion**

11         For the reasons discussed above, the Court concludes that Defendants are entitled to

12  summary judgment in their favor on all of Plaintiffs' federal claims.  The Court dismisses

13  without prejudice Plaintiffs' remaining state law claims.

14  IT IS SO ORDERED.

15  DATED:  September 3, 2008

16

17                                    MARILYN L. HUFF, District Judge
                                      UNITED STATES DISTRICT COURT

18

19

20

21

22

23

24

25

26

27

28